793 F.2d 69
 55 USLW 2013, 20 Fed. R. Evid. Serv. 1211
 In re TWO GRAND JURY SUBPOENAE DUCES TECUM DATED AUGUST 21, 1985.
UNITED STATES of America, Appellee-Cross-Appellant,
v.
John DOE, Esq., and Doe & Roe, P.C., Appellants-Cross-Appellees.
 Nos. 1075, 1253, Dockets 86-1006, 86-1007.
 United States Court of Appeals,
Second Circuit.
 Argued May 1, 1986.
Decided June 10, 1986.
 
 James R. DeVita, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, of counsel), for appellee-cross-appellant.
 John Burns, New York City (Burns & Fox, New York City, of counsel), for appellants-cross-appellees.
 Before FEINBERG, Chief Judge, and LUMBARD and OAKES, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The subpoenaed parties, "John Doe's" pre- and post-incorporation law firms, appeal from Judge Brieant's Order of October 19, 1985 granting in part the government's motion to hold the law firms in contempt under Fed.R.Crim.P. 17(g) for failing to comply with two grand jury subpoenas. The government cross-appeals that portion of Judge Brieant's Order quashing in part the subpoena directed to the pre-incorporation firm. We affirm, except as to the order to quash; that part of the Order is reversed and Doe, or a custodian selected by the law firms, is hereby directed to produce all of the subpoenaed documents.
 
 
 2
 On August 21, 1985, a grand jury sitting in the Southern District issued two subpoenas duces tecum, one to "The Law Practice of 'John Doe' " and the other to " 'Doe and Roe,' P.C." addressing Doe's law firm both before and after incorporation in November, 1981. The grand jury is investigating possible criminal tax law violations by Doe's firms in connection with the payment of settlements and awards to personal injury clients whom the firms represented on a contingent-fee basis. The government alleges that the investigation focuses on the possible manipulation of the flow of money from litigation and settlements to the firms' escrow accounts and the ultimate distribution of the money to clients, their creditors, and the firms' own accounts. The two subpoenas direct the firms to produce records relating to, inter alia, fee arrangements with, and disbursements on behalf of, their clients.
 
 
 3
 In a letter to the Assistant United States Attorney dated September 11, 1985, Doe's counsel stated that the firms would produce some of the subpoenaed records, but that the firms refused--on the grounds of attorney-client privilege and the fifth amendment privilege against self-incrimination--to produce cancelled checks drawn on the escrow accounts of the firm, retainer agreements, closing statements, correspondence relating to client recoveries, invoices and receipts for disbursements, and records relating to liens upon funds received on behalf of clients.
 
 
 4
 The government moved for an order holding the pre- and post-incorporation law firms in contempt for failing to comply with the subpoenas. Judge Brieant heard argument on October 25, 1985 and ordered compliance with the entire subpoena addressed to the professional corporation. The judge ordered partial compliance with the subpoena directed at the pre-incorporation law firm, insofar as it called for the production of retainer agreements and closing statements which, according to New York Appellate Division Rules, must be filed with the Office of Court Administration in contingent-fee cases. Judge Brieant reserved decision on the balance of the latter subpoena.
 
 
 5
 On October 28, 1985, in an Endorsement Memorandum, the judge denied the undecided portion of the government's motion and quashed the remainder of the subpoena. He found that, although Doe had associated himself with other lawyers during the pre-incorporation period, Doe had acted primarily as a sole practitioner and had held the subpoenaed documents in his individual capacity. The judge ruled that Doe could therefore assert his fifth amendment privilege against self-incrimination with respect to pre-incorporation documents, except for those "required records" under Appellate Division Rules which the court had previously held were not protected by the amendment. Judge Brieant entered a formal Order on October 29, 1985.[1]
 
 
 6
 Doe argues on appeal that the information sought in both subpoenas is highly confidential and is within the attorney-client privilege. Doe also maintains that all of the documents in the subpoena addressed to his pre-incorporation practice fall within his fifth amendment privilege and that Judge Brieant erred in applying the required records exception to the retainer agreements and closing statements.
 
 
 7
 The government argues for affirmance of the district court's Order, except that it cross-appeals that portion of the Order that quashed, on fifth amendment grounds, part of the subpoena directed to the pre-incorporation firm. The government asserts that Doe was not a sole practitioner; that he in fact ran a law firm with "Richard Roe" as his partner prior to their incorporation; and that the firm constituted a "collective entity" not entitled to rely on the fifth amendment privilege.
 
 
 8
 We agree with the government that the grand jury is entitled to all of the documents. Judge Brieant properly rejected Doe's claim that the attorney-client privilege protects the documents. A principal purpose of the privilege is to " 'encourage clients to make full disclosure to their attorneys' in order to enable the attorneys to provide sound legal advice." In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1036 (2d Cir.1984) (quoting Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). This purpose is not served by protecting information about client awards and fee arrangements from disclosure except where disclosure of such information would " 'amount to the prejudicial disclosure of a confidential communication,' " In re Grand Jury Subpoena Duces Tecum (Shargel), 742 F.2d 61, 64 (2d Cir.1984) (quoting Colton v. United States, 306 F.2d 633, 637 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963)). Far from containing confidential communications, the subpoenaed documents here merely catalogue financial information often disclosed in pleadings, bills of particulars, discovery, trials and appeals.
 
 
 9
 We have consistently held that, "absent special circumstances, client identity and fee information are not privileged." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 247 (2d Cir.) (en banc), cert. denied, --- U.S. ----, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). Doe fails to make a plausible claim for the existence of such circumstances. His principal argument is that the identities, awards and fee arrangements of the firms' clients should not be disclosed since the attorneys, not the clients, are the target of the grand jury investigation. This argument, however, only emphasizes that the rationale underlying the attorney-client privilege is inapplicable here: individuals such as Doe's clients are not likely to refrain from consulting lawyers because financial information arising out of the representation may be used against the lawyers.
 
 
 10
 Turning to Doe's fifth amendment argument, it is well settled that the amendment does not protect the subpoenaed records of the post-incorporation law firm. No artificial organization may invoke the personal privilege against self-incrimination. See Bellis v. United States, 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974). As to the pre-incorporation firm, we agree with the government that it should be treated as a "collective entity", not as a solo practice, and that Doe's personal privilege against self-incrimination is therefore inapplicable.[2] See Bellis, supra.
 
 
 11
 The firm held itself out to the public and the legal community as a collective entity before its incorporation in 1981. It used a letterhead, "Law Offices of 'John Doe' and 'Richard Roe' " listing Doe and Roe at the top (ostensibly as partners) and listing the names of associated attorneys below. Three attorneys were at various times listed as "Counsel" to the firm, further indicating the firm's institutional character. The firm's "blue back" for court papers contained Doe's and Roe's names in printed form, and, in a state court affidavit, Roe described himself as a "member of the firm of 'John Doe' and 'Richard Roe,' attorneys for the plaintiffs." These public representations are entitled to weight as it would have been a violation of professional ethics for "Doe" and "Roe" to have held themselves out as members of a law firm were this not so. See Model Code of Professional Responsibility DR 2-102(C) (1969).
 
 
 12
 The internal structure of the pre-incorporation firm also indicates that the firm was a collective entity. Roe received one fourth of either the firm's gross or its net income--a fixed division of income that reflected more than an informal fee-splitting arrangement that might exist between attorneys collaborating in just a few cases. The firm disposed of approximately 250 cases per year, and, in one year, deposited over $19 million in its escrow account. In order to handle this volume of business, the firm employed as many as fourteen lawyers and a clerical staff of ten, including four paralegals. The size of the firm and the magnitude of the legal work it performed strongly suggests that the pre-incorporation firm was an organized unit, not a loose association of individuals. When "Doe" and "Roe" incorporated, they did so without changing their pre-incorporation personnel or the essential features of their operation.
 
 
 13
 That Doe and Roe did not enter into a formal partnership agreement or file a partnership tax return in the pre-incorporation period does not preclude a finding that their firm was a collective entity for fifth amendment purposes. An organization may constitute a collective entity even when it has not taken steps to formalize its status. See Bellis, supra, 417 U.S. at 89 & 96 n. 4, 94 S.Ct. at 2183, 2187 n. 4. The critical issue is whether the organization had an institutional identity separate from that of its individual members. See id. at 95, 94 S.Ct. at 2186. We conclude that the pre-incorporation firm did have such an institutional identity and that the subpoenaed documents are the records of the firm, not those of the individual, Doe.
 
 
 14
 We also note that the subpoenaed retainer agreements and closing statements of the pre-incorporation firm fall within the "required records" exception to the fifth amendment and must be produced. These documents clearly meet the criteria for required records, as we have explicitly held. See United States v. Silverman, 449 F.2d 1341, 1345-46 (2d Cir.1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972). New York Appellate Division Rules require attorneys to file retainer agreements and closing statements in contingent-fee cases so that the courts may regulate the attorney-client relationship. Such records are ordinarily kept by lawyers even without regulation. Finally, the records are sufficiently "public."
 
 
 15
 Doe claims that the "required records" exception to the fifth amendment is no longer valid after the Supreme Court's decision in United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). The Court in Doe held that although the contents of a document might not be privileged, the act of producing the document may be. Id. at 612, 104 S.Ct. at 1242. The Court reasoned that physical production of documents can be testimonial when it constitutes an admission of facts such as control over, or authenticity of, documents. Id. at 613, 104 S.Ct. at 1242. The "Doe" in the present case makes the parallel argument that although a "required record" may not contain privileged information, a subpoenaed party may not be compelled to perform the act of producing the record if to do so might incriminate him. We disagree.
 
 
 16
 Doe did not involve required records, see 465 U.S. at 607 n. 3, 104 S.Ct. at 1240 n. 3, and we find nothing in its "act of production" analysis that can be construed as weakening the required records exception. See In re Dr. Doe, 711 F.2d 1187, 1192 (2d Cir.1983) (rejecting an attack on the exception based on the act of production doctrine announced in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Indeed, the exception overrides the privilege against self-incrimination in situations in which the privilege would otherwise apply; that is, even if the compelled act of producing the required records might be testimonial and incriminating. See id.
 
 
 17
 The rationale behind the exception is twofold. First, if a person conducts an activity in which record-keeping is required by statute or rule, he may be deemed to have waived his privilege with respect to the act of production--at least in cases in which there is a nexus between the government's production request and the purpose of the record-keeping requirement. Second, because the records must be kept by law, the record-holder "admits" little in the way of control or authentication by producing them. See In re Grand Jury Subpoena Served Upon Underhill, 781 F.2d 64, 65, 69-70 (6th Cir.1986); In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983, 722 F.2d 981, 987 n. 5 (2d Cir.1983). This is especially true where, as here, the record-keeper is required not merely to maintain certain records, but must file them with a public body. New York lawyers must file the retainer agreements and closing statements in contingent-fee cases with the New York Office of Court Administration, and the documents are in some instances open to inspection. See infra. We hold, therefore, that the required records exception provides an alternate ground for ordering the disclosure of the pre-incorporation firm's retainer agreements and closing statements.
 
 
 18
 Doe's other arguments for quashing the subpoenas are without merit. He claims that because Appellate Division Rules extend limited confidentiality to materials filed by attorneys, the compelled disclosure of the documents pursuant to the subpoenas impinges on New York's oversight of its attorneys. We disagree. The state's regulatory interest does not prevent disclosure to the grand jury in this case. Indeed, Appellate Division, Second Department Rules routinely permit disclosure of retainer agreements and closing statements on file to IRS agents, even absent a grand jury proceeding. See McKinney's Revised 1986 New York Rules of Court Sec. 691.20(g). First Department Rules permit disclosure of these documents to anyone upon the order of the presiding justice. See id. at Sec. 603.7(c). Certainly, disclosure of the documents to a federal grand jury is consistent with the limited confidentiality accorded them under New York's regulatory scheme.
 
 
 19
 Doe also contends that if the government can obtain the desired information from the Appellate Divisions and other sources, such as the law firms' banks, the government should not be permitted to subpoena attorneys' records. This court has, however, recently rejected this contention, stating that "to impose ... requirements that the government show its need for the information and that the attorney is the only source for that information would hamper severely the investigative function of the grand jury...." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 (2d Cir.) (en banc), cert. denied, --- U.S. ----, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).
 
 
 20
 Finally, Doe argues that even if the subpoenaed documents must be produced, ethical considerations and conflicts of interest prevent him or anyone else at his law firm from acting as the documents' custodian. He maintains that the district court erred in holding the law firms in contempt and that the court should have conducted a hearing to designate a suitable custodian. This argument misconceives the obligations of a corporation or a "collective entity" under subpoena. It is the duty of the law firms, not the district court or the government, to identify an appropriate custodian to produce subpoenaed documents. If no one may act as custodian without incriminating himself or herself, the firm is required to produce the subpoenaed records by supplying a new agent who has had no previous connection with the firm. See In re Grand Jury Subpoenas Issued to Thirteen Corporations, 775 F.2d 43, 47 (2d Cir.1985).
 
 
 21
 We affirm that portion of the district court's Order that granted the government's motion to hold the subpoenaed parties in contempt; we reverse that portion of the Order that quashed part of the subpoena directed to the pre-incorporation firm.
 
 
 22
 The mandate shall issue forthwith.
 
 
 
 [1]
 Judge Brieant stayed the imposition of sanctions pending this appeal
 
 
 [2]
 That the subpoena directed to the pre-incorporation firm was addressed to "The Law Practice of 'John Doe' " instead of "The Law Firm of Doe & Roe" is of little consequence since there is no evidence that Doe maintained, during the relevant period, any separate legal practice outside that performed under the auspices of Doe & Roe