## State of Vermont v. Jamie L. Ross

[568 A.2d 335]

No. 86-015

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed September 8, 1989

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Ilona Bessenyey*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Gibson, J.** Defendant Jamie Ross appeals his conviction of sexual assault upon a minor in violation of 13 V.S.A. § 3252(3). He claims five errors: (1) a deficient information charging the time of offense, (2) denial of his request to have a defense expert examine the victim, (3) improper bolstering of the victim's credibility by the State, (4) infringement of his right to confront the victim on cross-examination, and (5) an unfair demand by the State at sentencing. We affirm.

## I.

### The Information

In early 1984, while in foster care, the victim, age eight, told

her foster mother that both her stepfather and her uncle, defendant-appellant here, had sexually abused her. At trial, the victim described acts of sexual intercourse with her by defendant in her bedroom. The sexual abuse was corroborated by her younger brother, who said he witnessed some of it. The charging document alleged that the sexual assault occurred during the "summer of 1983." The court denied defendant's motion to dismiss the information on the ground that the time of the offense was too indefinite to adequately prepare a defense.

■ Our law recognizes that sex-related crimes—especially those involving child victims—are often hard to identify as happening on a particular date. Consequently, time is not an essential element to be charged in the information. See *State v. Williams*, 137 Vt. 360, 362, 406 A.2d 375, 376 (1979), *cert. denied*, 444 U.S. 1048 (1980). So long as it is shown that the crime occurred at a time not barred by the statute of limitations and the defendant is given fair opportunity to prepare a defense in light of the circumstances of the case, the defendant is not entitled to a dismissal. See *State v. Daniels*, 129 Vt. 143, 144, 274 A.2d 480, 480 (1971).

■ The due process right to notice of the time of the offense varies according to the age and circumstances of the victim and how the sexual abuse was allegedly carried out. Here, the victim was seven, and she did not report the abuse for about eight months after it happened. It is not surprising or unreasonable that the State could not determine the time of the offense any more precisely than it did.

■ Defendant argues that the vagueness of the notice as to time of offense prevented him from establishing an alibi and could subject him to double jeopardy. The abuse alleged here was behavior repeated over a period of time. An alibi in a case like this requires a showing of lack of opportunity over the whole time the alleged abuse took place. Defendant claimed he was never alone with the victim because his wife was always there. His opportunity to establish an alibi was not unreasonably thwarted.

■ As to the double jeopardy claim, defendant's argument is premature. "The proper time and method to challenge a subsequent charge on the grounds of former jeopardy is at the time such a charge is instituted . . . ." *State v. Nash*, 144 Vt. 427, 435, 479 A.2d 757, 761 (1984).

## II.

### *Reciprocal Discovery*

Defendant asked that a defense expert be permitted to examine the victim to evaluate whether she was suffering from post-traumatic stress disorder (PTSD) syndrome as a result of sexual abuse or other causes. The court denied the request. The State's expert, who had examined the victim, testified over defendant's objection. We have previously approved the use of expert testimony on PTSD in a limited way to aid the jury in the understanding of sexual abuse. *State v. Catsam*, 148 Vt. 366, 369–70, 534 A.2d 184, 187 (1987).

Defendant maintains, however, that when the defense does not have the opportunity to counter the State's expert with its own, the State should not be permitted to present its expert to the jury. We foresee that there will be cases where it is appropriate either to allow examination of a victim by the defense expert or to prohibit the State from providing its expert testimony when the former procedure is inappropriate. But this is not such a case. Such decisions are left to the sound discretion of the trial court, which was not, on this record, abused. Cf. *State v. Percy*, 149 Vt. 623, 636–38, 548 A.2d 408, 415–17 (1988) (due process right to reciprocal discovery not violated where court permitted State expert to interview defendant but defendant's expert was not permitted to interview victim).

■ The purpose of defendant's proposed expert presentation of the victim's mental state might have been either to persuade the jury that she did not suffer from PTSD or, if she did, to show that it was caused by someone other than the defendant. As to the first point, the defense argued to the jury that the victim had been sexually assaulted repeatedly over at least a two-year period by her stepfather, who had been convicted of the crime. The victim, according to the defendant, showed many of the symptoms associated with PTSD. The

defense portrayed a little girl who had been so victimized sexually by her stepfather that "she may never be made whole." As to the latter point, the State's expert admitted that she could not tell from the PTSD symptoms alone who had abused the victim, only that she had been sexually abused. There was, therefore, no need in this case for defendant's expert to examine the victim, for there was no dispute over the sole legitimate conclusion reached by the State's expert—that the victim suffered from PTSD syndrome caused by sexual abuse.

## III.

### Victim's Credibility

Defendant contends that the trial court erred in permitting the State to introduce expert testimony on the credibility of the child victim.

Dr. Pamela Langelier, a psychologist, was called by the State as an expert witness to explain to the jury the results of her evaluation of the victim. She related the psychological symptomatology of a sexually abused child of the victim's age. She was asked, "Is it your experience in dealing with children who are sexually abused that these symptoms ... can be easily faked?" Dr. Langelier stated that they could not, "not at a young age," and added, "Common sense tells you that little children don't make up stories or fake sexual knowledge. They have no interest in doing it. They gain themselves nothing."

Dr. Langelier told the jury that the victim was "referred to me to determine whether or not she had been sexually abused ... to what extent, by whom, and indeed if what she was saying is what happened." The witness then proceeded to detail the victim's sexual activity with defendant as told to her by the victim and corroborated by a foster parent. Dr. Langelier concluded that the victim had been sexually abused by defendant and others:

> So, I think I saw enough to believe that I saw symptomatology indicating sexual abuse had gone on for anywhere from four to five years, but the frequency of which it's hard to gain [sic] because of the environment in which she was raised in the first place. But based on her own records, it seems that the frequency with Uncle Jamie was

not as frequent as it was with other parties, but that it was defined with Uncle Jamie with specific memory because it was unusual form of stimulation for a child that age, oral sex. So, she remembered it clearly and it looks like it was twice if not more.

Defendant made no objection to the above testimony. Insofar as it amounted to an opinion that the victim had suffered sexual abuse, such an opinion would not be inadmissible. See *Cadel v. Sherburne Corp.*, 139 Vt. 134, 137, 425 A.2d 546, 547–48 (1980) (opinion evidence otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact); *State v. Norton*, 134 Vt. 100, 104, 353 A.2d 324, 326 (1976) (same); V.R.E. 704 (same).

██ It is a closer call, however, as to whether the testimony, taken as a whole, amounted to a conclusion on the part of the witness about the guilt or innocence of defendant. In effect, the testimony was a summation of the witness's own observations and records, including what the victim herself had said about what had happened to her. To the extent that the testimony amounted to a comment on the credibility of the victim, it would ordinarily be inadmissible. *State v. Catsam*, 148 Vt. at 370–71, 534 A.2d at 187–88. Inasmuch as defendant did not object, however, he failed to preserve the issue for appeal, and we are bound to reverse only if we find that the trial court's failure to exclude the testimony sua sponte constituted plain error.[1] *State v. Recor*, 150 Vt. 40, 46, 549 A.2d 1382, 1387 (1988); *State v. DeJoinville*, 145 Vt. 603, 605, 496 A.2d 173, 174–75 (1985). Plain error will be found "only in a rare and extraordinary case where the error is an obvious one," *State v. Ramsay*, 146 Vt. 70, 75, 499 A.2d 15, 18 (1985), and only if the error affects substantial rights of the defendant. *Recor*, 150 Vt. at 46, 549 A.2d at 1387; V.R.Cr.P. 52(b).

We have previously encountered allegations of plain error under similar circumstances in *DeJoinville* and *Recor*. In *DeJoinville*, the expert witness testified that children would

---

[1] The same expert witness testified at the trial of the victim's stepfather. Her opinion on the credibility of the victim, which was admitted over objection of counsel, resulted in a reversal and remand for a new trial. *State v. Ross*, No. 86-017 (Vt. Mar. 8, 1988) (unpublished opinion).

not lie about being sexually abused, and the prosecutor twice repeated the substance of this testimony to the jury in closing argument. *DeJoinville*, 145 Vt. at 604, 496 A.2d at 174. The defendant made no objection at trial either to the testimony or to the prosecutor's remarks, but on appeal, argued that the court had committed plain error by not excluding the various statements sua sponte. We held there was no plain error, noting that plain error will be found "'only in rare and extraordinary cases'" and that "'the error must be obvious and strike at the very heart of defendant's constitutional rights or result in a miscarriage of justice.'" *Id.* at 605, 496 A.2d at 175 (quoting *State v. Turner*, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985)).

In *Recor*, the expert witness, when asked what it meant when a child gave consistent stories over several interviews, testified that it gave the expert a sense that "what they are saying happened, happened." *Recor*, 150 Vt. at 45, 549 A.2d at 1386. That testimony, which was held not to amount to plain error, *id.* at 46, 549 A.2d at 1387, is of exactly the same tenor as the testimony in the instant case. In short, there is little to distinguish this case from either *DeJoinville* or *Recor*. If anything, *DeJoinville* is more egregious than the instant case because of the repeated emphasis therein placed on the expert's testimony by the prosecutor in closing argument.

The issue concerning the scope of Dr. Langelier's testimony was raised by the court at the outset of trial. Prior to opening statements, the court inquired about the State's expert on child sexual abuse, as follows, "[S]he's not going to testify on the ultimate issue of credibility?" The prosecutor answered, "No, she's not. . . . The State in no way is going to solicit testimony on the credibility issue. We understand how bad that is." It is clear, then, that both the court and counsel had the issue very much in mind. If there were an obvious violation, it should have been noticed by counsel; yet, when the testimony was given, counsel made no objection.

As we have stated previously, "'[t]he duty to exclude objectionable data lies squarely upon the shoulders of defense counsel.'" *State v. Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 89 (1979) (quoting *United States v. Castenada*, 555 F.2d 605, 610 (7th Cir. 1977)). "'If the rule were otherwise, counsel might

at times be tempted to remain silent about some fault on the part of the trial court ... and so, without giving it a chance to correct the situation, arm themselves with ground for reversal if the verdict should go against them.'" *Id.* at 190–91, 404 A.2d at 89 (quoting *State v. Hood*, 123 Vt. 273, 277–78, 187 A.2d 499, 502 (1963)).

We note a further distinction between the instant case and *Catsam*, relied upon by defendant. In *Catsam*, the Court noted: "While admission of this type of expert testimony might be harmless in a case in which there was ample extrinsic evidence of guilt, that is not the case here." *Catsam*, 148 Vt. at 372, 534 A.2d at 188. The only direct evidence of the offense in *Catsam* was the testimony of the child-victim herself. In the case before us, there was extrinsic evidence of guilt in the form of an eyewitness to the offense itself: the brother of the victim. It is difficult to imagine stronger, more direct, extrinsic evidence in a criminal case than the testimony of a person who actually witnessed the crime in progress.

■ On the basis of the record before us and our own prior precedents, we conclude that the testimony of Dr. Langelier did not amount to plain error.

## IV.

### *Right to Confront Witness*

The defense, prior to trial, filed a notice that it intended to introduce evidence that the victim had been sexually assaulted by her stepfather and others. The State moved in limine to exclude evidence of the victim's prior sexual conduct under the Rape Shield Law, 13 V.S.A. § 3255. During argument before jury selection, defense counsel indicated in somewhat vague terms that several named relatives and other unnamed people, in addition to her stepfather and the defendant, had been accused by the victim of sexually assaulting her, and that she later denied some of these allegations. The court, in a preliminary ruling, indicated an inclination to exclude such evidence, but left the question open to be raised again during the presentation of evidence; defendant did not again raise the issue, however.

■ During the course of the trial, it became apparent that defendant was not the only one alleged to have sexually mistreated the victim. While cross-examining the victim, defense counsel elicited from her that her stepfather had abused her sexually, "[a] lot of times." When defense counsel inquired about a camping trip with another uncle, the State's objection was sustained. No offer of proof was made. The defense's point became apparent when Dr. Langelier testified that another uncle was mentioned by the victim as an abuser. Thus, insofar as demonstrating another possible source of the PTSD syndrome, this issue was amply brought to the jury's attention through the testimony of both Dr. Langelier and the victim. See *State v. Catsam*, 148 Vt. at 379, 534 A.2d at 192–93. Although defendant argues that it was error to prevent him from cross-examining the victim about other alleged abusers, we fail to fathom what more impact such an inquiry could have had in defending the charge, absent an offer of proof detailing the basis for the relevance of the inquiry. See V.R.E. 103(a)(2) (error may not be predicated upon a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer").

■ Defendant further contends that he should have been permitted to test the victim's credibility by inquiring about prior false allegations of sexual abuse. The Rape Shield Statute, 13 V.S.A. § 3255, makes evidence of the prior sexual conduct of a complaining witness an improper subject for cross-examination, with certain exceptions, only one of which is pertinent to this discussion. Where the evidence "bears on the credibility of the complaining witness or it is material to a fact at issue and its probative value outweighs its private character, the court may admit ... [e]vidence of specific instances of the complaining witness' past false allegations of [sexual assault]." § 3255(a)(3)(C). Thus, before evidence of prior sexual conduct may be admitted into evidence, the statute requires that there be specific evidence of past *false* allegations. Defense counsel conceded to the trial court, however, that he did not know whether the allegations about which he sought to inquire were false or not. On the state of the offer

as made by counsel, therefore, the court was justified in excluding the evidence.[2]

## V.

### *Sentencing*

■■■ Defendant's final claim of error requires little discussion. At sentencing, the State recommended a sentence of eight to fifteen years. Defendant received what the State asked for. Prior to trial, the prosecution had agreed with the defendant, in exchange for a plea of guilty, to a sentence of two to eight years. The plea agreement was abandoned after the court expressed some doubts about defendant's competency to enter into it. Defendant now claims that the prosecutor's recommendation, which was not objected to at sentencing, constitutionally impinged upon his right to a jury trial by punishing him for the exercise of that right. The State was under no obligation, however, to recommend a particular sentence following trial on the merits, because the quid pro quo, defendant's plea of guilty, had been withdrawn from the bargain. See *Blackmon v. Wainwright*, 608 F.2d 183, 184 (5th Cir. 1979), *reh'g denied*, 611 F.2d 882, *cert. denied*, 449 U.S. 852 (1980) (if defendant turns down plea bargain offered by prosecutor, he may not then complain that he received a heavier sentence after trial, absent evidence of vindictiveness or punitive action); *Mitchell v. State*, 521 So. 2d 185, 187 (Fla. Dist. Ct. App. 1988) (when accused voluntarily chooses to reject or withdraw from a plea bargain, he retains no right to the rejected sentence). There is no evidence of vindictiveness on the part of the court or prosecutor, nor is there any reason to believe that defendant's sentence was the product of

---

[2] This approach is consistent with that followed elsewhere. See *Little v. State*, 413 N.E.2d 639, 643 (Ind. App. 1980) (evidence of alleged rape victim's false accusations of similar sexual misconduct is admissible on issue of victim's credibility, but allegations must be demonstrably false); *Commonwealth v. Bohannon*, 376 Mass. 90, 95, 378 N.E.2d 987, 991 (1978) (error for trial court to exclude proffered evidence of other false accusations of rape where defendant made offer of proof that indicated he had factual basis for concluding the prior allegations of rape were untrue); *State v. Padilla*, 110 Wis. 2d 414, 427, 329 N.W.2d 263, 270 (1982) (not error for court to exclude cross-examination about prior allegations of sexual intercourse with another man where there was no proof the prior allegations were untruthful).

anything other than an appropriate assessment of the circumstances following full disclosure of the facts at trial and in the presentence report. See *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

*Affirmed.*

Morse, J., dissenting. I believe that reversal and retrial are warranted because of plain error in the admission of certain testimony by the State's expert witness. Accordingly, I dissent.

Dr. Pamela Langelier was called by the State to explain the results of her evaluation of the victim. She did not, however, merely explain to the jury "the psychological and emotional profile of PTSD sufferers and [give] an opinion as to whether the testifying complainant suffers from the disorder," as permitted by *State v. Catsam*, 148 Vt. 366, 370, 534 A.2d 184, 187 (1987). In addition, the expert gave her opinion on the tendency of PTSD sufferers to tell the truth about incidents of sexual abuse and even went further by concluding that the victim had been sexually abused by the defendant. We held in *Catsam* that such testimony constitutes a direct comment on the credibility of the complainant:

> By testifying first that sufferers of PTSD generally do not fabricate claims of sexual abuse, and then that the complainant suffers from PTSD, her testimony left one clear and unmistakable inference to be drawn: the complainant would not fabricate this allegation.

*Id.* at 370, 534 A.2d at 187–88. "Since this type of evidence may unduly influence the jury's judgment with regard to the truthfulness of the complaining witness, it is not admissible." *Id.* at 371, 534 A.2d at 188. See also *United States v. Azure*, 801 F.2d 336, 340–41 (8th Cir. 1986); *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 778 (1987).

The Court concludes that the trial court's failure to exclude the testimony was not plain error. I cannot agree.

Application of the plain error rule necessarily involves discretion by the appellate court. Not all errors that potentially prejudice the rights of the defendant are deemed plain under the rule; if they were, trial counsel would have little incentive to object at trial—a result conducive of neither fair trials nor judicial economy—since all prejudicial errors,

whether preserved by counsel or not, would then mandate retrial. (Nonprejudicial errors do not warrant retrial in any event under the harmless error rule, V.R.Cr.P. 52(a).) The plain error rule, rather, provides: "Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the court." V.R.Cr.P. 52(b) (emphasis added); see *State v. Duff*, 150 Vt. 329, 337–38, 554 A.2d 214, 219 (1988); *State v. Ayers*, 148 Vt. 421, 425–26, 535 A.2d 330, 333–34 (1987).

The precise criteria governing this Court's exercise of discretion in finding a "plain error," however, are far from self-evident. Our language has been admittedly less than helpful. *State v. Turner* is a typical example: "[T]he error must be obvious and strike at the very heart of defendant's constitutional rights or result in a miscarriage of justice if we were to fail to recognize it." 145 Vt. 399, 403, 491 A.2d 338, 340 (1985). The first requirement recognizes that a trial judge cannot reasonably be expected sua sponte to correct an error unless the error is an obvious one. The second requirement emphasizes only that an error will not be deemed plain unless it is very serious or very prejudicial—and just what this means is open to speculation by those who practice in our courts. I will therefore try to be as explicit as I can in explaining why I would hold that the trial court in these circumstances committed plain error in allowing the expert to give her opinion that PTSD sufferers tend to tell the truth about incidents of sexual abuse and that the complainant had been sexually abused by defendant.

First, the same expert witness testified at the trial of the complainant's stepfather. In that case, her opinion on the credibility of the victim resulted in a reversal and remand for a new trial. *State v. Ross*, No. 86-017 (Vt. Mar. 8, 1988) (unpublished order). In my view, it is unfair to affirm defendant's conviction when admission of the equivalent testimony in the stepfather's trial warranted a remand.

Second, the error should have been obvious to the trial court. In fact, the issue was raised by the court prior to opening statements. The court inquired about Dr. Langelier's testimony as follows: "[S]he's not going to testify on the ultimate issue of credibility?" The prosecutor answered: "No, she's not.... The State in no way is going to solicit testimony on the

credibility issue. We understand how bad that is." The trial court thus had in effect ruled against admissibility. As the Court concludes: "It is clear, then, that both the court and counsel had the issue very much in mind." *State v. Ross*, 152 Vt. 462, 469, 568 A.2d 335, 340 (1989). Holding the trial court to a duty sua sponte to suppress the inadmissible testimony, therefore, is not unreasonable in these circumstances.

Third, by using an expert to bolster the credibility of the complaining witness, the State intruded on the core function of the jury, infringing upon defendant's constitutional right to trial by jury. See *United States v. Azure*, 801 F.2d at 340 ("'[c]redibility ... is for the jury—the jury is the lie detector in the courtroom'") (quoting *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974)); *United States v. Samara*, 643 F.2d 701, 705 (10th Cir.), *cert. denied*, 454 U.S. 829 (1981) ("'exclusive function of the jury to weigh the evidence and determine credibility'") (quoting *United States v. Ward*, 169 F.2d 460, 462 (3d Cir. 1948)); *United States v. Rosenberg*, 108 F. Supp. 798, 806 (S.D.N.Y.) ("[I]t is hornbook law that the credibility of a witness and the weight to be given his testimony rests exclusively with the jury."), *aff'd*, 200 F.2d 666 (2d Cir. 1952).

Fourth, the State committed the cardinal sin of eliciting a conclusion from its expert on the guilt of the defendant. Rule 704 of the Vermont Rules of Evidence permits opinion testimony that "embraces an ultimate issue," but only if it is "otherwise admissible." The rule on expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

V.R.E. 702. This expert was qualified, at best, to render an opinion on the child victim's symptoms and their etiology, not to tell the jury who abused her. "'[S]o long as the expert does not render an opinion on the accuracy of the victim's recitation of facts, his or her general testimony on the dynamics of sexual abuse does not prejudice the jury.'" *State v. Hicks*, 148 Vt. at 462, 535 A.2d at 778 (quoting *Commonwealth v. Baldwin*, 348

Pa. Super. 368, 377, 502 A.2d 253, 257 (1985)). Dr. Langelier's opinion that "the frequency [of sexual abuse] with Uncle Jamie was not as frequent as it was with other parties, but ... she remembered it clearly and it looks like it was twice if not more," was an unambiguous conclusion, by the only expert witness who testified, that defendant was guilty. The testimony was inadmissible, highly prejudicial, and deeply invasive of defendant's right to trial by jury. It is hardly an exaggeration to say that defendant was tried by an expert rather than a jury of his peers.

The Court does not address these concerns. Rather, the Court's decision apparently relies on the authority of two recent cases. I do not believe those decisions justify today's result.

In *State v. DeJoinville*, 145 Vt. 603, 604–05, 496 A.2d 173, 174–75 (1985), we held that the admission of expert testimony on the truthfulness in general of child victims of sexual abuse was not plain error. The victim's pediatrician had testified that, "based on his experience, children wouldn't lie about being sexually abused." *Id.* at 604, 496 A.2d at 174. The expert in *DeJoinville* did not, however, conclude that the victim in that case had been sexually assaulted by the defendant. The error in the case at bar simply was more egregious than the error in *DeJoinville*. Nor were the other factors enumerated above present in *DeJoinville*, namely, the State's promise not to elicit testimony on the victim's credibility and the admission of equivalent testimony causing reversal in a related trial.

*State v. Recor*, 150 Vt. 40, 45–46, 549 A.2d 1382, 1386–87 (1988), also held that the admission of expert testimony pertaining to the credibility of the complaining witness—again a child victim of sexual assault—was not plain error. Again, the particular circumstances in which the forbidden testimony arose here were absent in *Recor*. In addition, the violation of the *Catsam* rule in *Recor* was not clearcut. The State's psychologist testified as follows:

> Q.  Does it tell you something as a forensic psychologist when a child remains consistent over several interviews?
>
> A.  Well, it gives me a sense that what they are saying happened, happened.

*Id.* at 45, 549 A.2d at 1386. We stated that this testimony, "while not the specific profile evidence at issue in *Catsam*, appears to be of the general type that violates the spirit of *Catsam*." *Id.* at 46, 549 A.2d at 1386–87. By contrast, the State's evidence in the instant case violates the precise holding in *Catsam*, and was even more prejudicial because the expert told the jury she believed the victim had been sexually abused by defendant. The Court ignores these distinctions.

Finally, I would add that the error cannot be dismissed as harmless, as intimated by the Court. "Harmless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." *State v. Hamlin*, 146 Vt. 97, 106, 499 A.2d 45, 52 (1985). The burden is on the State to show that the error was harmless. *Catsam*, 148 Vt. at 372, 534 A.2d at 188. Here, it is far from clear beyond a reasonable doubt that the unlawful testimony had no effect on the verdict. Dr. Langelier was the sole expert witness at trial. Other witnesses testified for the State, but all, except for the victim's younger brother, based their testimony on what she had told them. Dr. Langelier's testimony as the State's expert may have carried great weight with the jury. It did not play "a minor role," as did the testimony of an expert on rape trauma syndrome in *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985) (holding admission of expert testimony not plain error). In *Bubar*, we expressed "concern that the [victim's] counselor, by testifying as an expert on rape trauma syndrome, lent an improper 'aura of special reliability and trustworthiness' to the complainant's testimony." *Id.* (quoting *State v. Saldana*, 324 N.W.2d 227, 230 (Minn. 1982)). Our concern is magnified here, where the victim is a child and the expert's testimony effectively constituted a direct comment on the victim's credibility. See *United States v. Azure*, 801 F.2d at 341 (not harmless error where State's expert bolstered credibility of victim who was "a key government witness in [the] case, and her credibility was a very important issue"); *Catsam*, 148 Vt. at 371, 534 A.2d at 188 ("this type of evidence may unduly influence the jury's judgment"). The central point of the expert's testimony was that defendant was guilty, and that this was evident because the victim was telling the truth.

478

I would reverse and remand for a new trial. Justice Dooley joins in this dissent.