# State of Vermont v. David Gomes

[648 A.2d 396]

No. 89-543

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed July 1, 1994

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Gary Kessler*, State's Attorneys and Sheriffs Department, Montpelier, for Plaintiff-Appellee.

*Michael Rose*, St. Albans, for Defendant-Appellant.

**Gibson, J.** Defendant David Gomes appeals his conviction on four counts of lewd and lascivious conduct upon a child in violation of 13 V.S.A. § 2602. He claims three errors: (1) the informations were unduly vague, thwarting his ability to establish an alibi, (2) the denial of his request for access to attendance records of the day-care facility where the abuse allegedly occurred further frustrated his attempts to establish a defense, and (3) expert testimony regarding the credibility of the alleged victims was improper. We conclude that defendant was entitled to the day-care attendance records, and, accordingly, we remand the matter for the trial court to determine if defendant was prejudiced by the court's refusal to allow defendant access to the records.

## I.

The State brought charges against defendant after six children who attended a day-care facility operated by defendant's sister reported that defendant had sexually abused them. The incidents of abuse allegedly occurred during the summer of 1985 through the summer of 1986, but the children did not disclose defendant's involvement until late 1987, gradually revealing, through the spring of 1988, further

incidents. Defendant argues that the time specified in the informations—approximately May 1985 to September 1986—was too vague and broad, rendering it impossible for him to prepare an adequate defense, especially an alibi defense.

In cases of juvenile sexual abuse, time of commission is not an essential element of the offense and need not be charged in the information. *State v. Ross*, 152 Vt. 462, 465, 568 A.2d 335, 337 (1989). Because young children have difficulty specifying the date on which an incident occurred, the State must show only that the crime occurred within the statute of limitations. See *id.* "The fact that a defendant raises an alibi defense does not alter these holdings and does not make time an essential element." *State v. Infante*, 157 Vt. 109, 111, 596 A.2d 1289, 1291 (1989).

In determining whether the notice of time in the informations was reasonable, we consider all the circumstances of the case, including (1) the age and circumstances of the victim, (2) how the abuse was allegedly carried out, and (3) the State's ability to be more specific. See *Ross*, 152 Vt. at 465, 568 A.2d at 337–38. Here, the children were all preschool age at the time of the alleged offenses, and they did not report the abuse until more than a year after the last charged incident. Not surprisingly, they were unable to identify the precise dates of the alleged offenses. Despite an extensive investigation, the State could establish only that the offenses occurred while defendant was living in a trailer on the same property as the day-care facility. Given the circumstances of this case, it was not unreasonable that the State could not be more precise. See *id.* (because victim was only seven years old and delayed reporting abuse, it was not unreasonable that time of offense charged was not precise).

Defendant must be given a "fair opportunity to prepare a defense in light of the circumstances of the case," *id.* at 465, 568 A.2d at 337, but he has no vested right to an alibi defense. *State v. Dunbar*, 152 Vt. 399, 404, 566 A.2d 970, 973 (1989). Although defendant was unable to establish an alibi for the entire time period alleged in the information, his inability to do so does not, by itself, show that he had no opportunity to prepare an alibi defense.

II.

Defendant also claims the trial court erred in denying him access to day-care attendance records that he believed were necessary to

prepare his alibi defense and to challenge the children's testimony. During discovery, defendant subpoenaed records documenting the attendance of the children at the day-care facility. He was employed during some of the months covered by the informations, and hoped to show, among other things, that some or all of the children were absent on days when he was present at the facility. The operators of the facility refused to turn over the attendance records, asserting a Fifth Amendment privilege against self-incrimination, and defendant moved to compel production of the records.

After an in camera inspection, the court concluded that the contents of the records were not privileged but that the act of producing the records would be "testimonial and incriminating" because their "production would be an admission that the records exist and that they are authentic." Noting that "[a]uthentication of the records and proof of their existence could be a link in the chain of evidence showing that certain children were entrusted to [the day-care operators'] care on certain dates," the court concluded that, given the operators' potential liability under several criminal statutes, "proof of existence and authentication of the records could tend to incriminate them." Based on this analysis, the court ruled that the Fifth Amendment protected the operators from producing the records.

Defendant argues that the court's refusal to order disclosure of the attendance records based on the operators' Fifth Amendment privilege was erroneous because state regulations require such records to be kept by day-care operators and to be available for inspection by the Department of Social and Rehabilitation Services (SRS). See Agency of Human Services, Department of Social and Rehabilitation Services, Children's Day Care Licensing Regulations for Early Childhood Program § 3(5), (7), in 4 Code of Vermont Rules 13 162 001-49 (1993). As defendant points out, SRS day-care licensing regulations require that daily attendance records be maintained for each child for at least a year after withdrawal from the day-care facility, and that the records be subject to inspection by SRS upon request. The State counters that defendant is not entitled to the records because they are not open to the public, and, in any case, he cannot show prejudice resulting from the court's refusal to order the day-care operators to turn them over to him. We conclude that production of the records is not protected by the Fifth Amendment, and that defendant was potentially prejudiced by his inability to obtain the records.

In the principal case relied on by the trial court, the United States Supreme Court held that although the *contents* of voluntarily kept business records of sole proprietorships are not protected by the Fifth Amendment, the *act of producing* such records is protected when it would involve testimonial self-incrimination by the record holder. *United States v. Doe*, 465 U.S. 605, 612–13 (1984). In *Doe*, the Supreme Court deferred to the district court's finding that enforcement of the subpoena would have compelled the record holder to admit that the records existed, that they were in his possession, and that they were authentic. *Id.* at 613–14.

■ The Supreme Court explicitly noted, however, that that case did not concern records required by law to be kept or to be disclosed to a public agency. *Id.* at 607 n.3. Thus, *Doe* did not disturb the "required records" exception to the privilege against self-incrimination, which allows the disclosure, notwithstanding Fifth Amendment concerns, of routinely kept records that are maintained pursuant to a valid regulatory scheme and are at least analogous to public documents. See *Grosso v. United States*, 390 U.S. 62, 67–68 (1968); *Shapiro v. United States*, 335 U.S. 1, 33–35 (1948).

■■ Indeed, federal courts that have considered the interplay between the "act-of-production doctrine," first enunciated in *Fisher v. United States*, 425 U.S. 391, 410 (1976), and the "required records" exception have concluded that the exception remains viable after *Fisher* and *Doe*. E.g., *In re Grand Jury Subpoena (Spano)*, 21 F.3d 226, 230 (8th Cir. 1994); *In re Two Grand Jury Subpoenae Duces Tecum*, 793 F.2d 69, 73 (2d Cir. 1986); *In re Grand Jury Subpoena Duces Tecum (Underhill)*, 781 F.2d 64, 69–70 (6th Cir.), *cert. denied*, 479 U.S. 813 (1986). These cases make it clear that when the criteria for the required-records exception are met, the exception applies regardless of whether the act of producing the requested records would involve self-incriminating testimony by the record holder. *Spano*, 21 F.3d at 230; *Two Grand Jury*, 793 F.2d at 73; *Underhill*, 781 F.2d at 70. The courts have cited several reasons for this conclusion: (1) a person engaged in a regulated activity in which record keeping is required by statute or law is deemed to have waived the privilege against self-incrimination with respect to the act of producing the required records; (2) the record holder admits little of significance in the way of existence or authentication by producing records that the law requires to be kept in furtherance of public policy; and (3) the public interest in obtaining records required by a regulatory scheme

normally outweighs the private interest in nondisclosure because invocation of the privilege frustrates the regulatory purpose of the scheme. See *Spano*, 21 F.3d at 230; see also *Two Grand Jury*, 793 F.2d at 73; *Underhill*, 781 F.2d at 70. In short, the required-records exception is indeed an *exception* to the Fifth Amendment privilege, and, as such, it presupposes that disclosure or production of the required records may be testimonial and self-incriminating. *Underhill*, 781 F.2d at 70; *In re Kenney*, 504 N.E.2d 652, 658 (Mass. 1987).

We must determine, then, whether the required-records exception applies in this case. Required records are those records that meet the following criteria: (1) the purpose of the recordkeeping is essentially regulatory rather than criminal; (2) the records contain the type of information that the regulated party would ordinarily keep; and (3) the records have assumed "public aspects" that render them at least analogous to public documents. *Grosso*, 390 U.S. at 67-68. The State does not challenge application of the exception under the first two criteria, and, indeed, they are easily met. While the day-care licensing regulations at issue here require records that may eventually aid in criminal prosecutions, their essential purpose is regulatory in nature. Further, the required attendance records contain the type of information a day-care facility would ordinarily keep as a matter of course.

The State argues, however, that the third criterion of the exception is not met because the attendance records are not open to public inspection or subject to a filing requirement. The problem with this argument is that the "public aspects" criterion does not require records to be open to public inspection or to be subject to a filing requirement. Rather, the records need only be analogous to public documents. *Grosso*, 390 U.S. at 68. While the "public aspects" prong "does not lend itself to analytical precision," *United States v. Lehman*, 887 F.2d 1328, 1333 (7th Cir. 1989), it is met in most cases in which a statute or regulation subjects the records to inspection by a federal or state agency. See, e.g., *Underhill*, 781 F.2d at 68–69 ("public aspects" criterion satisfied when federal laws required that records of odometer statements be provided to buyers and be open to inspection by federal officials); *In re Kenny*, 715 F.2d 51, 53 (2d Cir. 1983) (medical records "possess 'public aspects' by virtue of New Jersey's comprehensive regulatory scheme"); *In re Doe*, 711 F.2d 1187, 1192 (2d Cir. 1983) (although "what is needed to show public aspect is

somewhat clouded," it was satisfied when doctor knew that law entitled state to examine patient files as part of professional conduct investigation); *Louisiana State Bar Ass'n v. Chatelain*, 513 So. 2d 1178, 1183 (La. 1987) ("While attorneys' records may not be public documents, they do have 'public aspects' in that the public at large has an interest in the integrity of the profession and clients in particular have an interest in how an attorney handles money which belongs to them."); *In re Kenney*, 504 N.E.2d at 657 (holding, in disciplinary proceeding, that attorney's financial records regarding client funds were not public documents, but assumed public aspects because they were necessary for attorney to meet statutory and ethical obligations).

■ Here, the required records are available to parents and open to inspection by SRS in furtherance of the state's interest in overseeing facilities that provide child care to the public. Without question, the public's interest in the regulatory oversight of day-care facilities confers sufficient "public aspects" to meet the third criterion of the required-records exception. Even if we were to discount defendant's particularized claims regarding his need for the attendance records, the public's general interest in the availability of the records outweighs the record holder's claims of privilege for this type of information. Cf. *Underhill*, 781 F.2d at 69 (society's interest in maintenance of odometer records outweighs dealer's claim to constitutional protection). Further, assuming the requirement in the SRS regulations that all "child/family records" be kept confidential includes attendance records, the parents' expectations of privacy "do not negate a finding that there is a public aspect to the files under the state regulatory schemes." *In re Grand Jury Proceedings*, 801 F.2d 1164, 1168 (9th Cir. 1986).

The State's reliance on *Marchetti v. United States*, 390 U.S. 39 (1968), is unavailing. The statement in *Marchetti* that information is not stamped with a public character merely because the government has "formalized its demands in the attire of a statute," *id.* at 57, when taken in the context of that case, means only that the government cannot avoid the Fifth Amendment by enacting a statute that criminalizes the failure to keep records of criminal activity—in that case, gambling. Cf. *Underhill*, 781 F.2d at 69 (compliance with requirement to keep odometer records is not incriminating on its face). This is not the situation here; the instant regulations are "not directed at a 'highly selective group inherently suspect of criminal

activities,' involved in 'an area permeated with criminal statutes.'" *Id.* (quoting *California v. Byers*, 402 U.S. 424, 430 (1971)).

■ We recognize that the cases cited above involved situations in which grand juries or prosecutors, not defendants in criminal cases, sought the required records, but we see no principled reason to distinguish those cases from the instant one on that basis. In determining whether the required-records exception applies in a particular case, consideration of who has requested the records is not the controlling factor. In most of the cited cases, like this one, the entity or person requesting the records is distinct from the agency that is statutorily entitled to inspect the records. Further, the fact that the person requesting the records is the accused in a criminal case only heightens the need for their production, assuming the records will aid in defense against the charges.

The State contends, however, that assuming the trial court should have granted defendant's request for access to the attendance records, defendant has failed to show prejudice because (1) the same information was available from the parents of the children; (2) even if the requested records contradicted the alleged victims' statements regarding the presence of other children at the time of the abuse, the records could not disprove the occurrence of the abuse, and (3) defendant's own testimony at trial indicated that the attendance records could not provide him with a complete alibi. The State supports its third point by citing the trial court's conclusion, made in response to defendant's motion for judgment of acquittal, that defendant's own testimony indicated that he was at the day-care facility often enough to have committed the alleged offenses.

■ We do not find any of the State's three points to be persuasive. To the contrary, we conclude that the court's refusal to allow defendant access to the attendance records was potentially prejudicial to defendant. Regarding the State's first point, even assuming that the parents of the alleged victims would provide defendant with credible information, there is no evidence to suggest the parents knew precisely on what days and during what hours their children were present. At best, the parents might be able to refresh their memories from bills or canceled checks, assuming these were still available to them, but contemporaneous attendance records of the day-care facility would be far more reliable.

The State's second point is also unavailing. The fact that the alleged victims might incorrectly name other children as present during the

abuse would not disprove the occurrence of the abuse, but it might cause the jury to doubt the children's credibility, which could have a direct impact on the verdict. Cf. *State v. Searles*, 159 Vt. 525, 529, 621 A.2d 1281, 1284 (1993) ("the way the sexual activity happened was relevant to the credibility of the happening").

As for the State's last point, the fact that defendant's testimony suggested he was present at the day-care facility enough time to have committed the alleged offenses means only that the attendance records would not provide him with a complete alibi. Nevertheless, the attendance records might narrow the possibilities of when the offenses could have occurred, and more importantly, as noted above, might provide information that would challenge the credibility of his accusers regarding the details of the alleged acts.

We conclude that the required-records exception is applicable in this case, and that the trial court abused its discretion by not granting defendant's request for discovery of the day-care facility's attendance records. Because, on the state of the record, we are unable to determine whether defendant was actually prejudiced, the matter must be remanded for the trial court to determine whether, in fact, defendant was prejudiced by his lack of access to the attendance records. See, e.g., *State v. King*, 583 A.2d 896, 903 (Conn. 1990) (trial court must determine by in camera inspection on remand whether denial of access to report prepared by prosecution witness prejudiced defendant); *Commonwealth v. French*, 611 A.2d 175, 180 (Pa. 1992) (case remanded for trial court to determine whether defendant was prejudiced by court's refusal to allow defendant to examine pretrial statements of prosecution witnesses).

## III.

Because the status of defendant's conviction will depend on the trial court's ruling on the prejudicial effect of nondisclosure of the attendance records, we must address defendant's argument that three expert witnesses improperly testified on the credibility of the complainants.

Expert testimony that is a direct comment on the truthfulness of the complaining witness in a child sexual abuse case is inadmissible because it may lend an "improper 'aura of special reliability and trustworthiness'" to the complaint. *State v. Catsam*, 148 Vt. 366, 371, 534 A.2d 184, 188 (1987) (quoting *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985)). Statements to the effect that children generally do not lie about or fabricate incidents of sexual abuse are

also inadmissible because they are the equivalent of a direct comment on the child's truthfulness. *Id.* at 370, 534 A.2d at 188.

 Mental health experts may, however, explain the psychological effects of sexual abuse on children to aid the jury in understanding conduct of the alleged victim. *Id.* at 369–70, 534 A.2d at 187. This evidence "may be useful to dispel misconceptions" about the behavior of victims of child sexual abuse that could otherwise undermine the credibility of the child complainant. *State v. Gokey,* 154 Vt. 129, 133, 574 A.2d 766, 768 (1990). In sum, experts may provide general information on the dynamics of sexual abuse to assist the jury in assessing the credibility of the child complainant, but may "'not render an opinion on the accuracy of the victim's recitation of facts.'" *State v. Hicks,* 148 Vt. 459, 462, 535 A.2d 776, 778 (1987) (quoting *Commonwealth v. Baldwin,* 502 A.2d 253, 257 (Pa. Super. Ct. 1985)); see also *State v. Wetherbee,* 156 Vt. 425, 431, 594 A.2d 390, 393 (1991) (psychological expert must not be perceived by jury as "'truth detector'—someone who, by application of scientific method, determines whether the victim is telling the truth").

Defendant made several objections to the testimony of Dr. Anna Salter, who was called by the State to provide general information about children's memories and their susceptibility to suggestion during interviews. The evidence revealed that in this case the children who accused defendant of abuse had been sexually abused by the son of the day-care operators and suffered psychological disorders as a result. The defense sought to convince the jury that the parents and the investigators had persuaded the children that defendant was also involved in the abuse at the day-care. To rebut this theory, Dr. Salter discussed the recent research on whether young children can remember distant events accurately and whether their memories can be altered by leading or suggestive questions. All of her testimony related to children in general. Dr. Salter had not examined the children and could not comment directly on their truthfulness. She testified: "I am only answering questions on memory and the ability to remember, not whether or not a child is lying."

 The trial court has discretion to admit expert testimony to assist the jury in understanding the evidence. Here, the expert provided specialized knowledge on the ability of children to remember events in the distant past to aid the jury in accessing the credibility of the complainants. See V.R.E. 702 (expert may testify to specialized knowledge to assist jury in understanding evidence).

Unlike the experts in *Catsam* and *Wetherbee*, Dr. Salter did not appear as a "truth detector" because her testimony did not refer to any of the children specifically and because she did not address the issue of truthfulness. We find no abuse of discretion in admitting her testimony. See *Hicks*, 148 Vt. at 461, 535 A.2d at 777 (within trial court's discretion under V.R.E. 702 to admit expert testimony to aid trier of fact). "'The fact that the jury, if it believes the expert's testimony, may draw inferences which would tend to bolster the victim's credibility does not make the evidence inadmissible.'" *Id.* at 462, 535 A.2d at 778 (quoting *Baldwin*, 502 A.2d at 257).

Defendant also argues that the testimony of Sandra Potvin and Barbara Ruggiero improperly bolstered the credibility of the complainants. Unlike Dr. Salter, Ms. Potvin and Ms. Ruggiero had treated the child complainants. Pursuant to V.R.E. 804a, the treating therapists testified to hearsay statements of the children identifying defendant as one of the abusers at the day-care. Defendant does not dispute the admissibility of these statements. They also testified, however, that the children had good memories. Defendant contends that the expert opinions on the children's memories constitute impermissible testimony on the accuracy of the children's V.R.E. 804a statements. Cf. *Hicks*, 148 Vt. at 462, 535 A.2d at 778 (allowing expert testimony that fear may cause victims of child sexual abuse to delay reporting abuse).

The duty to exclude objectionable testimony rests squarely with defense counsel, and without an objection, the defendant fails to preserve the issue for appeal. *State v. Recor*, 150 Vt. 40, 46, 549 A.2d 1382, 1387 (1988). Defendant here did not object to the experts' testimony that the children had good memories, and therefore, we may reverse "only if we find that the trial court's failure to exclude the testimony sua sponte constituted plain error." *Ross*, 152 Vt. at 468, 568 A.2d at 339. Plain error is rare and will be found only in the extraordinary case when the error is both obvious and affects the defendant's substantial rights. *State v. Sims*, 158 Vt. 173, 181, 608 A.2d 1149, 1154 (1991).

We conclude that this testimony does not amount to plain error because it does not address the truthfulness of the complainants, but rather their ability to remember events accurately. Cf. *State v. Weeks*, 160 Vt. 393, 402, 628 A.2d 1262, 1267 (1993) (plain error when expert tells jury "who should be believed"). The experts here did not testify that the children were telling the truth. They did not state that these children were resistant to suggestibility, nor that the

children's memories of abuse by defendant were accurate. Nor did they conclude that defendant had abused the children. Thus, there was no obvious error in their testimony. To the extent that they conveyed their belief in the children's allegations, we conclude that the testimony was less egregious than in other cases in which we have found no plain error. See, e.g., *Sims*, 158 Vt. at 182, 608 A.2d at 1155 (expert implicitly assumed truth of complainant's account of abuse and conveyed this assumption to jury); *Ross*, 152 Vt. at 467–68, 568 A.2d at 339 (expert concluded that complainant had been sexually abused by defendant).

Finally, defendant implies that we should not follow our plain-error precedents on this issue because, in a recent case, we granted the petitioner a new trial when his attorney had failed to object to expert testimony on the credibility of the child complainant. See *In re Ross*, 158 Vt. 122, 126–27, 605 A.2d 524, 526–27 (1992). Defendant's argument is without merit. In *State v. Ross*, we first ruled that the expert testimony did not constitute plain error. 152 Vt. at 470, 568 A.2d at 340. Subsequently, the defendant filed a petition for post-conviction relief, arguing that he had been denied effective assistance of counsel, to his prejudice. *In re Ross*, 158 Vt. at 125, 605 A.2d at 526. We granted a new trial on this ground, but did not overrule our previous holding on plain error. Here, defendant contends that the expert testimony constituted plain error, and we therefore apply the plain-error analysis. His right to effective assistance of counsel is not before the Court, however; therefore, *In re Ross* is not applicable.

*Reversed and remanded for determination by trial court whether defendant was prejudiced by denial of access to the day-care facility's attendance records. If the court determines defendant was not prejudiced, it may enter judgment, reinstating the conviction and sentence; otherwise, defendant shall be entitled to a new trial.*