## State of Vermont v. Kevin D. Cate

[683 A.2d 1010]

No. 94-419

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 9, 1996

*Jane Woodruff,* Orleans County State's Attorney, Newport, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *William A. Nelson* and *Joel Faller,* Appellate Defenders, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant Kevin Cate appeals his conviction for sexual assault, 13 V.S.A. § 3252(a)(1)(A). He argues that the trial court erred in denying his motions for judgment of acquittal and for a new trial. He also argues that a probation condition requiring him, as part of a sex-offender therapy program, to acknowledge culpability for his conduct violates his constitutional rights to free speech and against self-incrimination. We vacate the probation condition requiring him to admit his guilt, but otherwise affirm.

Viewed in the light most favorable to the State, *State v. McGee,* 163 Vt. 162, 164-65, 655 A.2d 729, 732 (1995), the record discloses the following facts. On April 28, 1993, defendant and complainant, together with another woman and three other men, attended a barbecue at a friend's house in Lowell. Before arriving at the party, complainant had taken an anti-anxiety medication for which she had a prescription, and had also been drinking champagne. At the party, she drank beer and vodka, smoked marijuana, and consumed pills that another guest gave her that she believed were prescription painkillers. At one point in the afternoon, complainant, who was wearing a one-piece bathing suit, pulled down her bathing-suit top and exposed her breasts to the other guests.

As the afternoon progressed, complainant felt "extremely high" from the drugs and "very drunk" from the alcohol, and, around five o'clock, she decided to go upstairs in the house to pass out. When she entered the house, there was no one else downstairs or upstairs. She went upstairs and lay down on a bed. The next thing she remembered was waking up in bed with her bathing suit pulled down and

defendant on top of her with his penis inside her vagina. According to complainant, prior to that time, she had not told defendant that he could have sex with her. When she awoke, she told defendant to "get the hell off me." Defendant complied, telling complainant, "Don't worry, I won't tell [your boyfriend]." Complainant dressed and immediately left the house to return home.

When she arrived home, complainant telephoned a female friend, who described complainant as "pretty hysterical" and "crying and sobbing." The friend told complainant to come right over, and complainant arrived within fifteen minutes, still crying and very upset. Complainant told her friend that she had gone to the barbecue in Lowell, had gotten drunk and had gone to lie down, and that when she awoke, defendant was having intercourse with her. The friend telephoned another female friend, and complainant spoke with the second friend, repeating her story. Both friends advised complainant to seek medical treatment at the Newport hospital emergency room. Complainant drove herself to the hospital that evening. Emergency room records indicated that complainant arrived at 10:47 p.m. and left at 12:55 a.m.

Defendant was arrested the next day and charged with sexual assault. According to the arresting officer, defendant reacted with "disbelief" to the charge. After waiving his *Miranda* rights in writing, he stated that he had had sex with complainant the previous day, but that complainant had consented. Defendant said that complainant was an "exhibitionist" who had been "flashing" at the barbecue. He told the police that he had gone into the house in the late afternoon and found complainant in the upstairs bedroom, that he and complainant started talking, and that complainant then undressed, performed oral sex with him, and engaged in sexual intercourse with him. Defendant told the police that complainant had been drinking but "wasn't that drunk" and "knew what she was doing" during the sex acts. Defendant told the officer that complainant had never fallen asleep or passed out while they were together.

The case was tried to a jury on May 17-18, 1994. Prior to trial, the court granted defendant's motion in limine to allow evidence of complainant's prior sexual conduct at the April 28 barbecue, on the grounds that such evidence was material to her lack of consent, and did not fall within the protections of Vermont's rape shield act, 13 V.S.A. § 3255(a).

At trial, the defense sought to convince the jury that complainant had not "passed out," but rather had "blacked out" at the party, and

had willingly engaged in sexual conduct that she could not remember later. Complainant testified that she had in the past experienced both blackouts and passing out, and knew the difference between the two phenomena. According to complainant, when she blacked out she remained awake, whereas when she passed out she was rendered completely unconscious. She testified that she was certain she had passed out before defendant commenced any sexual acts that day, and that she had not consented to any of those acts. Complainant also testified that she had lived with defendant for three months the previous year in a nonsexual relationship, that defendant had invited her to have sex with him several times during that period, and that complainant had always refused.

Three defense witnesses, including defendant, testified concerning complainant's conduct after she had gone upstairs to the bedroom. According to these witnesses, a number of guests, including complainant and defendant, went inside the house in the late afternoon. The defense witnesses described complainant as dancing partly or fully unclothed in the upstairs bedroom while the party's host attempted to sleep, and then engaging in oral sex, first with the host and then with defendant, while the other guests watched. Defendant testified that the other guests went downstairs, leaving complainant and himself alone upstairs, and that complainant then began making gestures to indicate that she wanted to perform sex acts or oral sex on him, and that he "clearly asked it if was okay." Complainant pulled her bathing suit down around her waist and performed oral sex for about twenty minutes. Complainant then began "gesturing that we have intercourse." Defendant asked whether it would affect their friendship, and complainant said, "No, that would be okay." Complainant then removed her bathing suit entirely, and defendant and complainant "had intercourse for a short period of time," until defendant "decided myself I had enough." Defendant removed his penis and talked for a minute with complainant, who then got up and put her swimsuit back on. Whereupon defendant said, "I hope it doesn't affect our friendship." According to defendant, complainant was fully conscious throughout this period, and was never sleeping or passed out.

At the end of the State's case, and again at the conclusion of the evidence, defendant moved for acquittal on the ground that the State had failed to prove complainant's lack of consent beyond a reasonable doubt, as required under 13 V.S.A. § 3252(a)(1)(A). The court denied defendant's motion, and the jury returned a guilty verdict. The court later denied defendant's motion for a new trial.

Defendant was sentenced to five-to-fifteen years in prison, with all but three years of the prison term suspended, and to an indefinite term of probation, which included the following condition:

> 5. . . . *You shall sign an acknowledgement of responsibility for the acts for which you have been placed on probation.* (This will be used for treatment purposes & will not be used against you for *civil proceedings*). . . . It is necessary for Mr. Cate to work through denial in order to be eligible for the seex [sic] offender program in the Chittenden facility, if he does not choose to do this program, a V[iolation] O[f] P[robation] could be done while he is incarcerated and the def[endant] would then be sent to the Northwest State Corr[ectional] Facility in St. Albans.

(Emphasis added.) The present appeal followed.

## I.

■ Defendant claims that the trial court should have granted a judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that complainant had not consented to defendant's sexual acts. 13 V.S.A. § 3252(a)(1)(A). In reviewing a denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the State, excluding any modifying evidence; we will uphold the court's ruling if the evidence fairly and reasonably could convince a reasonable trier of fact of defendant's guilt beyond a reasonable doubt. *McGee*, 163 Vt. at 164-65, 655 A.2d at 732; V.R.Cr.P. 29(a).

The State presented complainant's testimony that she was passed out at the time of the alleged offense, that she had not, up to that point, given anyone consent to have sex with her, and that, upon waking from her passed-out state, she had demanded that defendant immediately stop having sex with her. Two State's witnesses testified that complainant was "hysterical" in the hours after the alleged offense and told them that she was asleep when defendant began having intercourse with her; a third witness, the emergency room nurse who treated complainant for over an hour at the hospital, testified that complainant was still upset at 11:00 on the evening of the alleged offense. Finally, complainant's friend testified that complainant on prior occasions had rejected defendant's sexual advances. We conclude that the evidence was sufficient to fairly and reasonable

convince a reasonable jury, beyond a reasonable doubt, that complainant had not consented to a sexual act with defendant.

Defendant contends, however, that complainant's testimony should have been excluded because she could not testify from personal knowledge, owing to her extreme intoxication at the time of the alleged offense; that evidence of complainant's insistence that defendant's sex acts stop immediately and of complainant's emotional state after the event was not sufficient to prove lack of consent; and that evidence of complainant's prior rejections of defendant's sexual advances was improperly admitted to show lack of consent. We address these claims in order.

## A.

Defendant contends that complainant's testimony should have been excluded because her account of the circumstances of the alleged assault indicates significant memory gaps, and that complainant therefore was not competent to testify that she had passed out and was unable or unwilling to consent to sex.

As a general rule, reception of evidence is a matter of discretion for the trial court. *State v. Percy*, 156 Vt. 468, 475, 595 A.2d 248, 252 (1990). In the instant case, however, defendant failed to object to the competency of complainant's trial testimony. The trial transcript reflects that, when the State asked complainant whether she knew the difference between "blacking out" and "passing out," defense counsel objected on the ground that the State had failed to lay a foundation that complainant was qualified to offer an opinion. See V.R.E. 701, 702 (setting forth foundations for opinion testimony by lay and expert witnesses).* Before the trial court ruled on the objection, the State elicited foundation testimony from complainant concerning her prior experiences with "blackouts" and "passing out." The following exchange then occurred:

STATE:           On April 28th of 1993, did you pass out or black out?

COMPLAINANT:  I passed out.

---

*Among the foundational elements of opinion testimony by a lay witness is the requirement that the lay witness's opinion be "rationally based on the perception of the witness." V.R.E. 701(a). Defense counsel did not specify, however, whether he was objecting to complainant's qualifications as a lay witness or as an expert witness. Compare V.R.E. 701 (lay witness) with 702 (expert witness).

■ At no time did defense counsel request a bench ruling on his earlier objection, or raise a Rule 602 objection that complainant lacked personal knowledge of the matter. On the record presented, we conclude that defense counsel did not object with sufficient specificity and clarity to allow the trial court a fair opportunity to rule on the question. See *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 191 (1991) (mem.). In any event, an objection based on the witness's qualification to render an opinion, even if ruled upon by the trial court, does not preserve an appeal based on the witness's competence. See *State v. Sims*, 158 Vt. 173, 181, 608 A.2d 1149, 1154 (1991) (objection on one ground does not preserve appeal claim based on another ground).

As we recently observed, "The duty to exclude objectionable testimony rests squarely with defense counsel, and without an objection, the defendant fails to preserve the issue for appeal." *State v. Gomes*, 162 Vt. 319, 330, 648 A.2d 396, 404 (1994). In such circumstances, "we may reverse 'only if we find that the trial court's failure to exclude the testimony sua sponte constituted plain error.'" *Id.* (quoting *State v. Ross*, 152 Vt. 462, 468, 568 A.2d 335, 339 (1989)) (emphasis added). We will find plain error only in the rare and extraordinary case where the error is obvious, and only if the error affects substantial rights of the defendant. *Sims*, 158 Vt. at 181, 608 A.2d at 1154.

We conclude that the court's failure, on its own, to exclude or limit complainant's testimony did not amount to plain error. The Vermont Rules of Evidence provide that "[e]very person is competent to be a witness except as otherwise provided by statute or in these rules." V.R.E. 601(a). An explicit exception to the presumption of competency is found in Rule 602, which states, "The testimony of a Witness may be excluded or stricken unless evidence is introduced sufficient to support a finding that [s]he has personal knowledge of the matter." V.R.E. 602. The rule goes on, however, to say that "[e]vidence to prove personal knowledge may, but need not, consist of the testimony of the witness h[er]self." *Id.* The rules reflect "the modern trend which has converted questions of competency into questions of credibility while 'steadily moving towards a realization that judicial determination of the question of whether a witness should be heard at all should be abrogated in favor of hearing the testimony for what it is worth.'" 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 601[05], at 601-40 (1990) (hereinafter Weinstein) (quoting Comment, *Witnesses Under Article VI of the Proposed Federal Rules of Evidence*, 15 Wayne L. Rev. 1236, 1250 (1969)).

■ In the instant matter, defendant was aware from the commencement of prosecution that complainant both admitted heavy consumption of drugs and alcohol prior to the alleged sexual assault and claimed to have been unconscious at the time the alleged sexual assault began. Defendant made no effort, however, to obtain a pretrial ruling on complainant's competency to testify from personal knowledge; nor did defendant, once trial had commenced, seek voir dire of complainant's testimonial competency outside the jury's presence or otherwise object to complainant's testimony on competency grounds. The effects of drugs or alcohol to impair the ability of a witness to perceive or remember events are not proper subjects for judicial notice, so as to render a witness incompetent per se to testify. *State v. Booth*, 423 S.W.2d 820, 823 (Mo. 1968). Rather, where a witness admits to drinking or consuming drugs heavily at the time of critical events, and testifies to an ebbing or fading memory concerning those events, the question is properly treated by the court as one of credibility and not competency, and the question is best left to the jury. *United States v. Strahl*, 590 F.2d 10, 12 (1st Cir. 1978); see also *United States v. Bedonie*, 913 F.2d 782, 799 (10th Cir. 1990) ("We consider appellants' suggested fusion of competency and credibility analysis to be regressive rather than progressive in relation to the evolution of the law in this area.").

As one commentator has observed:

> [T]he judge must admit the testimony even though the witness is not positive about what [s]he perceived, provided the witness had an opportunity to observe and obtained some impressions from h[er] observations. This is true even where the witness admits to having perceptual problems. In that situation, a complete revelation of the witness' problems to the jury will allow it to assess the witness' testimony in light of the actual circumstances and give it the appropriate weight.

Weinstein, *supra*, ¶ 602[02], at 602-12 to 602-13 (footnote omitted); accord *United States v. Peyro*, 786 F.2d 826, 830-31 (8th Cir. 1986) (where witness testified to "broad, general recollection" despite substantial memory problems, no abuse of discretion in allowing testimony to reach jury, and no prejudice to defendant because witness's "recall and emotional problems were laid bare for the jury's consideration"). In the instant matter, there was no plain error in allowing complainant's testimony to reach the jury.

## B.

Defendant claims that the trial court erred in concluding that complainant's insistence that defendant's sex acts stop immediately at the moment she awoke and the reports of complainant's emotional state after the event precluded entry of a judgment of acquittal. Defendant argues that this evidence, while supportive of complainant's later belief that she had not consented to the sex acts with defendant, was not probative of complainant's lack of consent at the time of the sex act. Again, defendant's argument goes to the weight and not the sufficiency of the evidence. See *State v. Eaton*, 134 Vt. 205, 208, 356 A.2d 504, 506 (1976) (weight of complainant's testimony and her credibility are factors for jury to determine). On a motion for judgment of acquittal, it was appropriate for the trial judge, viewing the evidence in a light most favorable to the State, to allow this evidence to reach the jury.

## C.

Defendant contends that, in denying his motion for judgment of acquittal, the trial court erred in considering evidence that complainant had rejected defendant's sexual advances in the past. Citing V.R.E. 404(a), defendant argues that evidence of complainant's past conduct was not admissible to show her propensity to act in accordance with it. Here again, defendant failed to object to this evidence at the time it was offered, and we will review the court's ruling for plain error only. *State v. Noyes*, 157 Vt. 114, 116, 596 A.2d 340, 341 (1991).

█ Under Rule 404(a), evidence of a character trait generally is not admissible to prove that a person conformed to that trait on a particular occasion. Evidence of other acts may, however, be used to prove knowledge, intent, or absence of mistake or accident. V.R.E. 404(b). The court did not err in considering evidence of defendant's prior advances to complainant and her prior refusals, because a reasonable jury could find those prior acts probative of defendant's knowledge that complainant would not have consented to sex with defendant had she been mentally capable of understanding the nature, or otherwise been aware, of the sexual acts. See 13 V.S.A. § 3254(2)(A), (C).

## II.

█ Next, defendant argues that the trial court's denial of his motion for a new trial relied on a theory of the case that was not

presented at trial and incorrectly stated the law of sexual assault. A new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *State v. Trombly*, 148 Vt. 293, 297, 532 A.2d 963, 966 (1987), *cert. denied*, 486 U.S. 1029 (1988); V.R.Cr.P. 33. Unlike a Rule 29 motion, a Rule 33 motion tests the sufficiency of all the evidence presented at trial. "The basic difference is that the motion under Rule 29 raises the question whether the prosecution has presented an adequate case, whereas the motion under Rule 33 raises the question whether the jury has correctly performed its function of evaluating admittedly adequate evidence." Reporter's Notes, V.R.Cr.P. 33. The disposition of a motion for a new trial is within the court's discretion, and its decision will not be reversed unless defendant shows that discretion was either withheld or abused. *State v. Briggs*, 152 Vt. 531, 542, 568 A.2d 779, 785 (1989).

Defendant first argues that the court denied the motion for a new trial based in part on the theory that complainant was too intoxicated to consent, a theory of the case that was not presented at trial. According to defendant, the State produced evidence only that complainant was unconscious and therefore unable to give consent; consequently, the defense never had a chance to respond to the claim that complainant could not have given consent even in a state of blackout. Defendant did not object, however, to the jury instruction that

> [l]ack of consent may be shown where a defendant knows that the other person is mentally incapable of understanding the nature of the sexual act, or knows that the other person is not physically capable of resisting or declining consent to the sexual act. Or knows that the other person is unaware that a sexual act is being committed.

Throughout the trial, the State sought to prove that complainant was so intoxicated that she was unable to consent to defendant's sexual advances. Whether the jury found that complainant was unable to consent because she had passed out or blacked out was not significant, so long as the evidence did not preponderate heavily against the jury verdict. *Trombly*, 148 Vt. at 297, 532 A.2d at 966. In this case, the evidence does not preponderate heavily against either theory.

Defendant also argues that the trial judge misapplied Vermont's law of sexual assault in denying defendant's motion for a new trial. We

disagree. The court noted that "a reasonable inference is that a state of intoxication to the point of *either* passing out *or* 'blacking out' would be inconsistent with a claim that the victim was not so impaired as to be incapable of consent." Defendant contends that the foregoing statement undermines one crucial element of sexual assault, namely, that the State must prove defendant knew that complainant did not or was not able to consent. See 13 V.S.A. § 3252(a)(1)(A). He argues that the State failed to show that defendant had knowledge of her lack of consent, and that the record actually indicates that complainant had blacked out and had willingly engaged in sex acts that she cannot now remember. Whether complainant passed out or blacked out, however, a reasonable juror could find that defendant knew that complainant was either unaware that a sex act was being committed or incapable of declining consent to that act. *Id.* § 3254(2)(A)-(C).

The court's order denying defendant's motion for a new trial indicates that the court reviewed the evidence supporting the defense and prosecution theories of the case and found that "the trial was essentially a credibility contest." Defendant presented extensive evidence to support his claim that complainant had blacked out and may have given consent without remembering that fact and that, consequently, defendant had no basis to know that she did not consent. The State also offered evidence that complainant was so intoxicated that defendant had good reason to know that she was not capable of giving consent. At the close of evidence, the jury chose to believe the State. The evidence does not preponderate heavily against the jury's determination that defendant knew that complainant was so intoxicated that she could not consent.

## III.

Finally, defendant argues that the probation condition requiring him to admit his guilt as part of sex-offender therapy should be stricken because it violates his Fifth Amendment and Article 10 rights against self-incrimination and his First Amendment and Article 11 rights of free speech. Specifically, defendant argues that the requirement that he sign an acknowledgement of responsibility for sexually assaulting the victim is unconstitutional because (1) signing the acknowledgement would incriminate him for perjury, (2) penitential confessions violate the Fifth Amendment, and (3) the condition derogates his free-speech rights. Because the first argument is dispositive of defendant's claim on appeal, we do not reach the second and third arguments.

In *Mace v. Amestoy*, 765 F. Supp. 847 (D. Vt. 1991), the United States District Court held that when an individual asserts the privilege against self-incrimination, the Fifth Amendment

> "'privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings . . . unless and until he is protected at least against the use of his compelled answers.'"

*Id.* at 850 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77-78 (1973)). In *Mace*, a probation condition required the probationer to admit to his sex-offender therapist that he had had intercourse with the victim, even though his conviction was for lewd and lascivious conduct, a different crime from statutory rape. The federal district court adopted the finding of the federal magistrate that a probationer "'should not be left to the good intentions of the state when forced to incriminate himself or face incarceration,'" *id.* at 852 (quoting *Mace v. Amestoy*, No. 90-177, slip op. at 9 (D. Vt. Nov. 27, 1990) (Niedermeier, Mag.)), and held that "the state has the burden of eliminating the threat of incrimination." *Id.* at 851. Thus, "[i]f the state wishes to carry out rehabilitative goals in probation by compelling offenders to disclose their criminal conduct, it must grant them immunity from criminal prosecution." *Id.* at 851-52 (footnote omitted); cf. *State v. Gleason*, 154 Vt. 205, 210-13, 576 A.2d 1246, 1249-51 (1990) (probationer has no self-incrimination privilege for confession made in sex-offender therapy where double jeopardy clause protects probationer from all future proceedings and punishments connected with confession).

Although we are not bound by the decisions of the federal district court, we give respect and persuasive effect to its well-reasoned decisions on questions involving the United States Constitution. *State v. Austin*, 165 Vt. 389, 393-94, 685 A.2d 1076, 1080 (1996). We agree with and accordingly adopt the reasoning of the court in *Mace*, and hold that a person in a probation setting cannot be forced to incriminate himself without first receiving immunity from criminal prosecution as a result thereof.

A probationer may not assert the privilege against self-incrimination where his statements pose no realistic threat of incrimination in a separate criminal proceeding. *Gleason*, 154 Vt. at 212, 576 A.2d at 1250. At oral argument before this Court, however, the prosecutor plainly stated that, if defendant signs the acknowledgement, she will

charge him with perjury, an offense distinct from the crime for which he was convicted. See *United States v. Dixon*, 509 U.S. 688, 696 (1993) (test for whether two offenses constitute "same offense" for purposes of double jeopardy is whether "each offense contains an element not contained in the other"). Although the protection of the Fifth Amendment does not hinge on the likelihood of prosecution, see *Mace*, 765 F. Supp. at 851, the prosecutor's statement demonstrates that the State has not met its burden of eliminating the threat of incrimination. See *State v. Steinhour*, 158 Vt. 299, 301-02, 607 A.2d 888, 890 (1992) (State may validly insist on answers to incriminating questions only if it recognizes that answers may not be used in criminal proceeding and thus eliminates threat of incrimination); see also *State v. Imlay*, 813 P.2d 979, 985 (Mont. 1991) (because of potential for future perjury prosecution, probationer required to acknowledge guilt to comply with sex-offender treatment condition properly invoked privilege against self-incrimination). Requiring defendant to comply with his probation condition under such circumstances leaves defendant to the good intentions of the State, a result foreclosed by *Mace v. Amestoy*, 765 F. Supp. at 852. Without protection from the use of his statements in future prosecutions, defendant is entitled to invoke his Fifth Amendment privilege and is not required to sign the acknowledgement.

The federal district court in *Mace* specified that the prosecuting attorney must grant immunity if the State wishes to pursue rehabilitative goals in probation that compel offenders to discuss their criminal conduct. *Mace*, 765 F. Supp. at 851-52. We are not convinced, however, that a prosecutor's interest in rehabilitative probation, when weighed against the prosecutor's interest in prosecuting criminal conduct, is sufficient in and of itself to make the *Mace* court's remedy workable. See S. Solkoff, *Judicial Use Immunity and the Privilege Against Self-Incrimination in Court Mandated Therapy Programs*, 17 Nova L. Rev. 1441, 1487 (1993) ("While society has an interest in effective rehabilitation, the prosecutor is naturally reluctant to extend immunity unless there is a recriprocal prosecutorial pay-off."). Moreover, under Vermont law, the prosecutor is barred from granting use immunity solely to foreclose a future perjury prosecution, which the state's attorney has threatened in this matter. See 12 V.S.A. § 1664(a) ("no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used for any purpose, including impeachment and cross-examination, . . . *except a prosecution for perjury* . . . .") (emphasis added).

Accordingly, in situations such as this, where the prosecutor has failed to eliminate the threat of future prosecution, we hold that the proper remedy for protecting a probationer's privilege against self-incrimination is a grant of judicial use immunity that makes any statements required for successful completion of rehabilitative probation inadmissible against the probationer at a subsequent criminal proceeding. We further hold that the sentencing court must advise the probationer that statements required for successful completion of probation, and their fruits, will not be admissible against him or her at any subsequent criminal proceeding. See *State v. Begins,* 147 Vt. 295, 299-300, 514 A.2d 719, 722-23 (1986) (adopting judicial rule of evidence barring use of probationer's statements at subsequent criminal trial and requiring trial court to advise probationer of testimonial immunity).

We do not mean by our decision today to discourage district courts from imposing probation conditions of the kind at issue here. This Court has addressed, in several decisions in recent years, the constitutional claims arising when a convicted sex offender is required, as a condition of his probation, to attend sexual aggressiveness therapy, but the sentencing judge fails to advise the probationer that a requirement of such therapy is that the probationer acknowledge guilt for his criminal conduct. See, e.g., *State v. Fisk,* 165 Vt. 260, 261, 682 A.2d 937, 938 (1996); *State v. Rickert,* 164 Vt. 602, 603, 665 A.2d 887, 888 (1995) (mem.); *State v. Coleman,* 160 Vt. 638, 640, 632 A.2d 21, 23 (1993) (mem.). Justice Dooley, dissenting in *Fisk,* recently noted that "the high likelihood of misunderstanding" under such circumstances has resulted in a "recurring problem in prosecutions for sexual assault." *Fisk,* 165 Vt. at 264, 682 A.2d at 939 (Dooley, J., dissenting). In this matter, the Orleans District Court attempted to circumvent this problem by crafting a probation condition that clearly advised defendant of the implications of the probation condition requiring him to attend sexual aggressiveness therapy. We laud such efforts, but caution today that the court's intention to advise a probationer fully of the implications of probation conditions cannot come at the expense of the probationer's privilege against self-incrimination.

Accordingly, the probation order must be vacated, and the cause remanded for resentencing. On remand, the trial court may reimpose the challenged probation condition, but only if it first assures defendant on the record that statements required for successful completion of probation, and their fruits, will not be admissible against him at any

subsequent criminal proceeding. Absent such assurance, the State may not seek, nor the court impose, a probation condition requiring defendant to admit culpability for the conduct of which he stands convicted.

*Affirmed, except that the sentencing order requiring defendant to acknowledge his culpability as a prerequisite to enrollment in sexual aggressiveness therapy is vacated, and the cause remanded for resentencing in light of this decision.*