**State of Vermont v. Joseph C. Gorbea, III**

[726 A.2d 68]

No. 97-465

Present: Amestoy, C.J., Dooley, Morse and Johnson, JJ.

Opinion Filed January 29, 1999

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellant.

**Amestoy, C.J.** Defendant appeals his convictions for burglary, assault, and robbery. He contends the trial court erred by: (1) failing

to conduct an evidentiary hearing to determine whether extraneous information improperly influenced the jury; and (2) considering defendant's lack of remorse at sentencing without granting him judicial immunity. We affirm.

On November 13, 1996 two individuals entered the home of Yolanda Phillips wearing masks and brandishing a shotgun. They struck a visitor in the mouth and stole Phillips's rent money. Although the victims could not identify the assailants, they suspected that one of the perpetrators was Tim Flood because Flood had been expected to visit Phillips's house that evening. Moreover, Flood's car was seen pulling into Phillips's driveway about the time of the incident.

The following day, Flood was questioned by the police about an unrelated crime in which he was a suspect. During the questioning, the police asked Flood about the Phillips incident. Flood admitted his role in the offense, received a grant of immunity from the state's attorney, and recounted the events of that evening. Flood implicated James Lucero in the offense, who later confessed to his involvement and implicated defendant.

On the second day of trial, the court officer informed the judge that a juror, whom he did not identify, had expressed concern about the presence of spectators in the courtroom who might be related to defendant. The officer did not present a note to the judge or suggest that the juror was attempting to send the judge a message. The court understood the officer's statement as an observation, or as something the officer had overheard. The court informed the officer that the issue would be taken up with the sheriff at a security meeting previously scheduled for the noon break.

During the meeting, the court raised concerns about the safety of jurors leaving the building after reaching a verdict, noting that family members of defendant, a victim, and a State witness had all attended the trial. Moreover, defendant's mother and aunt had been involved in an altercation with Flood outside the courtroom after his testimony on the first day of trial. Accordingly, the sheriff agreed to supply a security detail to escort jurors to their cars after the verdict, which was expected the next day. The court decided not to inform counsel of the security plans until they were fully formed.

When trial resumed after the noon break, the court learned that the parties expected to conclude and send the case to the jury that day, rather than the next. The court did not inform counsel of the additional security measures at this time because it was unclear whether they could be put into place on such short notice. However,

the additional security arrived shortly after jury deliberations began. During deliberations, the sheriff informed counsel that the court had requested additional security to assuage any jury concerns about defendant's family. Defense counsel did not at that time object to the court's actions.

Following the verdict, however, defense counsel objected to not being informed earlier of the juror's concern, and subsequently filed a post-trial motion seeking a new trial based on the court's "ex parte communication with the jurors." Defense counsel also requested an evidentiary hearing, and indicated that she intended to call the judge as a witness at the hearing. The court denied the motion for a new trial and denied the request to call the judge as a witness, but agreed to allow the parties to submit proposed questions to be sent to the jurors.

The parties filed a joint letter with the court outlining nine questions which they proposed to ask the jurors at an evidentiary hearing.* After reviewing the questions, however, the court concluded that no prejudicial extraneous information or influence had been conveyed to the jury prior to the verdict. There was no evidence that any of the trial spectators had conducted themselves improperly or had called attention to themselves other than by their mere presence. The court also noted that there was no allegation or evidence that any of the jurors had observed or heard of the incident involving the alleged assault against Flood earlier in the trial. Accordingly, the court concluded that the allegations did not warrant an inquiry into the jury's deliberative process.

Prior to the sentencing hearing, defense counsel filed a letter with the court advising that defendant could not make a statement at sentencing without immunity. At the hearing, the court sentenced defendant to five to fifteen years. In imposing sentence, the court

---

*The proposed questions were as follows:

1. Did you speak to the court officer about feeling intimidated by the spectators in the courtroom?
2. If so, what did you tell the court officer?
3. What did the court officer tell you, if anything?
4. Did you convey these concerns to any other jurors? If so, to whom?
5. If so, was it before the jury deliberations began?
6. What did you say?
7. What was/were the other juror(s) response(s)?
8. Did the presence of the spectators in the courtroom effect [sic] your decision to reach a guilty verdict?
9. Did the presence of police spectators in the courtroom effect [sic] your decision to reach a guilty verdict?

noted that defendant had not "face[d] up to [his] problems." The court rejected counsel's argument that defendant could not accept responsibility for his actions without a grant of immunity. This appeal followed.

## I.

Defendant first contends the court erred in failing to conduct an evidentiary hearing to determine whether extraneous influences improperly influenced the jury's verdict. Determining whether a verdict was affected by extraneous influences "'is a fact-driven exercise'" that turns on the particular facts and circumstances of each case. *State v. McKeen*, 165 Vt. 469, 472, 685 A.2d 1090, 1092 (1996) (quoting *United States v. Sanders*, 962 F.2d 660, 668 (7th Cir. 1992)). "Because the trial judge develops a relationship with the jury during the course of trial he or she is in the best position to make that determination." *Id.* at 472, 685 A.2d at 1092-93. Therefore, we accord the trial court's ruling every reasonable presumption in its favor. See *id.* at 472, 685 A.2d at 1093. Absent a showing of abuse or withholding of discretion, the trial court's decision will be upheld. See *id.* at 472, 685 A.2d at 1092.

A defendant is entitled to a fair trial free of extraneous influences. See *State v. Wool*, 162 Vt. 342, 353, 648 A.2d 655, 662 (1994). To protect against prejudicial extraneous contact, we have adopted a two-part inquiry. A defendant alleging extraneous influences or juror misconduct must show that an irregularity occurred, and that the irregularity had the capacity to affect the jury's verdict. See *McKeen*, 165 Vt. at 472, 685 A.2d at 1092.

Defendant asserts that the mere presence of defendant's family in the courtroom and a juror's expressed concern about their presence necessitated an inquiry into whether an extraneous consideration had prejudicially influenced the jury. See V.R.E. 606(b) (juror may testify on question whether extraneous prejudicial information was improperly brought to jury's attention). The court properly ruled, however, that the allegations failed to satisfy the standard for such an inquiry. As the court observed, none of the spectators had caused a disturbance in the courtroom or exhibited any threatening behavior toward the jurors. Furthermore, there was no allegation, and no evidence, that any of the jurors were aware of the altercation between defendant's family and Flood. These findings are unchallenged. The court was in the best position to monitor the courtroom

proceedings, and observe the conduct and demeanor of the trial participants and spectators. See *McKeen*, 165 Vt. at 472, 685 A.2d at 1092. Having exercised its broad discretion in concluding that the mere expression of concern by a juror about the presence of defendant's family did not rise to the level of an extraneous influence capable of improperly influencing the jury, we cannot conclude that the court's decision represented a patent abuse of discretion. Accordingly, we find no error.

## II.

Defendant also contends the court erred by considering defendant's lack of remorse at sentencing without granting him immunity from any admissions of responsibility for the offense. Defendant relies principally on our decision in *State v. Loveland*, 165 Vt. 418, 684 A.2d 272 (1996), in which we reversed a sentence based, in part, on the defendant's failure to demonstrate remorse by admitting guilt to a charge of sexual assault. On remand, we required the sentencing judge to offer immunity against the use of his statements. See *id.* at 426-27, 684 A.2d at 278-79. *Loveland* relied on the companion case of *State v. Cate*, 165 Vt. 404, 415-17, 683 A.2d 1010, 1018-20 (1996), which held that where a defendant has testified at trial, the sentencing court may not explicitly condition probation upon an acknowledgment of criminal responsibility without eliminating the threat of a future perjury prosecution through a grant of judicial use immunity. *Loveland* extended the reasoning in *Cate* to sex offenders because of the unique requirement that they admit their responsibility as a condition to participation in sex offender treatment programs. "[W]e want to fashion a rule that encourages convicted defendants to accept treatment and rehabilitation, rather than emerging untreated from incarceration . . . ." *Loveland*, 165 Vt. at 427, 684 A.2d at 278.

We were careful in *Loveland* to limit the holding to sex offenders, see *id.* at 427 n.*, 684 A. 2d at 278 n.*, and to reaffirm the general rule, set forth in *State v. Sims*, 158 Vt. 173, 188-89, 608 A.2d 1149, 1158 (1991), that a sentencing court may properly consider a defendant's failure to accept responsibility for the offense without violating a defendant's privilege against self-incrimination. See *Loveland*, 165 Vt. at 423, 684 A.2d at 276.

This case fits neither of the limited exceptions carved out in *Loveland* and *Cate*. Defendant did not testify at trial, and the court did not expose him to possible perjury charges by explicitly condi-

tioning probation upon an admission of responsibility. Nor was defendant charged with a sex offense that might require an admission of responsibility as a condition to probation or parole. Accordingly, we find no error.

*Affirmed.*