**STATE of Vermont v. Christopher S. HAYES**

[783 A.2d 957]

No. 00-331

August 28, 2001. Defendant appeals his conviction by jury of second-degree aggravated domestic assault, arguing that the information was defective, that the absence of a court-ordered forensic examination prevented him from obtaining a fair and fully informed sentencing decision, and that the trial court violated his privilege against self-incrimination by failing to provide him with judicial use immunity before basing its sentencing decision on his refusal to acknowledge criminal responsibility. We reject each of these contentions and thus affirm the conviction and sentence.

Defendant was charged in separate informations with simple assault against his girlfriend, based on a November 7, 1998 incident, and second-degree aggravated assault against the same victim, based on a January 9, 1999 incident. The charges were joined at a single trial, after which defendant was acquitted of the simple assault charge, but convicted of the second-degree aggravated assault charge.

On February 18, 2000, following completion of the presentence investigation (PSI) report, the sentencing hearing commenced. The hearing was continued after the trial court, at the request of defense counsel and with the acquiescence of the State, ordered that defendant be given a psychological evaluation at the Woodstock Correctional Facility. Defendant was held without bail pending resumption of the hearing. When the hearing resumed on April 7, 2000, the court discovered that the evaluation had never been performed. Apparently, the Department of Corrections contended that the correctional facility was not responsible for providing "forensic," as opposed to "treatment-oriented," evaluations, and took the position that a forensic evaluation would have to be provided by an outside psychiatrist. Upon inquiry from the court, the State stated that it did not oppose an evaluation, but would not seek funds to

have one done. Defense counsel stated that her client had been incarcerated since mid-February and wanted the case resolved. She further indicated that defendant was "hopeful" that he would obtain a probationary sentence, as had been recommended in the PSI report. The court then engaged defense counsel and defendant in an extended colloquy in which the court repeatedly asked defendant if he wanted to proceed without the evaluation and repeatedly warned defendant that the court was not restricted to the recommendation contained in the PSI report but rather could sentence defendant up to the full extent permitted under the law. After consulting with his counsel on several occasions, defendant formally waived his right to an evaluation and unequivocally stated that he wanted the court to proceed with sentencing without the benefit of the evaluation. The court then heard testimony and sentenced defendant to one-to-five years to serve.

On appeal, defendant first argues that the Department of Corrections' refusal to honor the court's order for a psychiatric evaluation violated his right to a fair and fully informed sentencing decision. According to defendant, his agreement to proceed without an evaluation may have been knowing and intelligent, but it was not voluntary because he could not have waived a right he had already been denied. In defendant's view, he had no choice but to waive the evaluation.

We cannot agree with defendant's characterization of the stipulation. Although he was represented by counsel, defendant never argued before the trial court, as he does here on appeal, that the Department had a statutory duty to comply with the court-ordered evaluation. Rather than contest the Department's position concerning its responsibility to provide the evaluation, defendant made the conscious, voluntary choice to forego the evaluation, in the hope that the court would follow the recommendation of the PSI report. His gamble did not pay off, however, and he now claims that proceeding without the evaluation deprived him of a fair and fully informed sentencing hearing. Based on the facts recounted above, we conclude that defendant waived this argument by voluntarily agreeing to proceed with sentencing without the evaluation. See *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (determining whether waiver is knowing, intelligent, and voluntary depends on particular facts and circumstances), *overruled on separate grounds by Edwards v. Arizona*, 451 U.S. 477 (1981). Not only did defendant consciously elect to go forward without the evaluation, he never suggested that the PSI report was in any way incomplete, inaccurate, or insufficient. Indeed, there is no indication that the trial court possessed inadequate information about defendant's life, background, family, past conduct, or criminal record to reach a fully informed sentencing decision.

Next, defendant argues that the sentencing court violated his privilege against self-incrimination — and this Court's holdings in *State v. Cate*, 165 Vt. 404, 683 A.2d 1010 (1996), and *State v. Loveland*, 165 Vt. 418, 684 A.2d 272 (1996) — by insisting that he retract his trial testimony as a condition of granting him probation. In *Cate*, the defendant challenged a probation condition requiring him to sign an acknowledgment of responsibility for sexually assaulting the victim. We held that a defendant cannot be forced to incriminate himself by admitting criminal responsibility as a condition of probation unless he first received immunity from any future criminal prosecution stemming from the admission. *Cate*, 165 Vt. at 415, 417, 683 A.2d at 1018, 1019. We further held that if the prosecutor did not eliminate the risk of future prosecution derived from statements required for successful completion of rehabilitative probation, judicial use immunity would make such state-

ments inadmissible against the probationer at any subsequent criminal trial. *Id.* at 417, 683 A.2d at 1019. In *Loveland*, 165 Vt. at 426-27, 684 A.2d at 278-79, we acknowledged that *Cate* dealt with a very narrow situation, but nevertheless extended its holding to apply to statements made by sex offenders at sentencing. We concluded that if such statements were required for successful completion of probation, they would be inadmissible at any subsequent criminal proceeding. *Id.* at 427, 684 A.2d at 278. In that case, we remanded the matter for resentencing because the defendant's desire to protect his privilege against self-incrimination may have deterred him from making a statement at his sentencing hearing concerning his willingness to accept responsibility for his crime and thus successfully engage in a probationary sex offender treatment program. *Id.* at 427, 684 A.2d at 279.

Here, defendant stated at his sentencing hearing that he was not in denial with respect to his conduct toward his girlfriend. When the court asked defendant to clarify what he meant when he said he was not in denial about what had happened, defendant's response made it clear that he was not changing his claim, made at trial, that he had acted in self-defense. Indeed, defendant went on to describe his girlfriend as "abusive" toward him, acknowledging only that he should have walked away from the situation. In rendering its sentence, the trial court noted that defendant would not be a good candidate for a rehabilitative program because of his continuing denial of any criminal responsibility for the assault on his girlfriend. Defendant now argues for the first time on appeal that the court's reasoning in not giving him a probationary sentence, combined with its failure to offer him judicial use immunity, violated *Cate* and *Loveland* and his privilege against self-incrimination.

We cannot accept defendant's position, which, in effect, would allow defendants to "sandbag" the trial court by saying nothing about their self-incrimination concerns at sentencing and then later arguing on appeal, if they were not satisfied with the sentence imposed, that they would have made statements accepting criminal responsibility had they been given judicial use immunity. *Loveland* and *Cate* were issued more than three and one-half years before the sentencing hearing in this case. They clearly signaled that defendants who face a choice between the risk of a perjury conviction and candor at sentencing might, in the proper circumstances, obtain judicial immunity to protect them. But there is not the slightest indication that defendant, who engaged in a lengthy allocution at his sentencing hearing, amended his statements in fear of being charged with perjury. If he or his counsel had such concerns, or if he or his counsel had doubts about the applicability of *Loveland* in this situation, see *State v. Gorbea*, 169 Vt. 57, 61-62, 726 A.2d 68, 71 (1999) (reaffirming general rule that sentencing court may properly consider defendant's failure to accept responsibility for offense without violating his privilege against self-incrimination, and noting that *Loveland* holding is limited to sex offenders and does not apply unless defendant is exposed to possible perjury charges by trial court explicitly conditioning probation upon admission of criminal responsibility), he should have made those concerns known to the court at the sentencing hearing. At that point, the court could have made a ruling, and defendant would have known where he stood. As it stands, defendant cannot raise for the first time on appeal legal issues that he could have presented before the trial court for consideration. See *State v. Ruud*, 143 Vt. 392, 396, 465 A.2d 1377, 1379 (1983) (absent extraordinary circumstances, matters raised for

first time on appeal will not be considered).

Even if we were to reach the merits of defendant's claims, we doubt that *Cate* or *Loveland* would help him. Those decisions dealt with defendants convicted as sex offenders who would be required to admit to their criminal behavior in any probationary or correctional treatment programs. We expressly limited *Loveland*, the sentencing decision, to sex offenders because we were not convinced that the "hard testimonial choice" was present in other circumstances. 165 Vt. at 427 ·n.*, 684 A.2d at 278 n.*. Beyond arguing that any defendant who testifies at trial may have difficulty showing remorse and responsibility to influence sentencing, defendant fails to demonstrate that the dynamics of sentencing for the offense involved here created the hard testimonial choice.

Finally, defendant argues that the information charging him with second-degree domestic assault was jurisdictionally defective because it omitted the mens rea element, and thus could not support his conviction. See *State v. Kreth*, 150 Vt. 406, 408, 553 A.2d 554, 555 (1988) (information that omits essential element of crime charged is defective and cannot serve as basis of conviction). We find no merit to this argument. The written information may have omitted the mens rea element and added unnecessary surplusage, but the error was corrected at trial with no apparent prejudice to defendant. The trial court discussed the problems in the information with counsel ·at the jury draw. An orally amended information, which struck the surplusage and included the mens rea element, was read to and accepted by both counsel and was read to the jury panel prior to voir dire. Defendant did not object to the amendment either at the jury draw or any time thereafter. Further, the court's preliminary and final instructions to the jury included the mens rea element and defined it. Defendant has utterly failed to demonstrate that the error in the initial written information resulted in him not being informed of the nature of the accusation against him or not being able to intelligently prepare his defense. See *id.* at 407-08, 553 A.2d at 555; see also *State v. Roy*, 151 Vt. 17, 28, 557 A.2d 884, 891 (1989).

*Affirmed.*