State v. Haner (2005-272)

2007 VT 49

[Filed 01-Jun-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 49

 No. 2005-272


 State of Vermont Supreme Court

 On Appeal from
 v. District Court of Vermont,
 Unit No. 2, Bennington Circuit

 Harold Haner, Sr. January Term, 2007


 Nancy Corsones, J.

 William H. Sorrell, Attorney General, and David Tartter, Assistant Attorney
 General, Montpelier, for Plaintiff-Appellee.

 Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.


 PRESENT: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and 
 Davenport, Supr. J., Specially Assigned

 ¶ 1. JOHNSON, J. Defendant Harold Haner, Sr. appeals the district
 court's denial of his motion for a new trial. He claims that the district
 court erred by: (1) refusing to grant use immunity to his brother who had
 previously made exculpatory statements, and (2) ruling that several
 proffered documents containing confessions by his brother were inadmissible
 hearsay. We affirm.
 
 ¶ 2. In October 2000, defendant was convicted of aggravated sexual
 assault on his daughter, A.H. We affirmed the conviction in November 2001. 
 In late February 2002, defendant's brother, who was seventeen at the time,
 went with their mother to the state police and confessed to the crime for
 which defendant had been convicted-sexually assaulting A.H. in March 1999. 
 Defendant's brother then proceeded to write twenty-three letters to various
 parties, including defendant, expressing his guilt. 

 ¶ 3. In June 2002, defendant filed a motion for a new trial based on
 newly discovered evidence, attaching a sworn affidavit by his brother that
 included a confession to the sexual assault. An evidentiary hearing on the
 motion was held on July 30, 2003. At the hearing, defendant's brother
 testified that he had come to court to confess to a crime that he had
 committed. He further testified that he had waited so long to come forward
 because he did not believe his brother could be convicted of a crime he did
 not commit, and that he had only written a note to their mother confessing
 to the sexual assault when he feared defendant would go to jail. When
 defendant's brother was asked to provide details about the sexual assault,
 the court cautioned him against self-incrimination and asked if he wished
 to speak to an attorney before proceeding. He replied in the affirmative. 
 An attorney was provided to him, and from that point forward he refused to
 answer questions, invoking his Fifth Amendment right against
 self-incrimination. 
 
 ¶ 4. Defendant subsequently filed a motion requesting that the
 court "use its inherent power to grant use immunity to [his brother] and
 thus require[] him to testify in the pending motion for a new trial." The
 court denied the motion in September 2003. The hearing on the motion for a
 new trial reconvened in March 2005. Defendant's brother again testified
 that he had previously confessed to sexually assaulting A.H., however, he
 invoked the Fifth Amendment when asked whether he had actually committed
 the offense. In support of his motion for a new trial, defendant proffered
 several sources containing confessions by his brother: statements to the
 state police; letters written to defendant, A.H., and others; an affidavit;
 and deposition and hearing testimony predating his invocation of the
 privilege against self-incrimination. At the court's request, the parties
 filed memoranda addressing admissibility of the proffered evidence under
 the statement-against-penal-interest exception to the hearsay rule. V.R.E.
 804(b)(3). The court deemed the confessions hearsay, and consequently
 denied defendant's motion for a new trial. This appeal followed.

 ¶ 5. Defendant's underlying claim on appeal is that the trial court
 erred in denying his motion for a new trial pursuant to Vermont Rule of
 Criminal Procedure 33. He bases this claim of error on two specific
 actions of the court: (1) its refusal to grant use immunity to his brother,
 and (2) its exclusion of his brother's confessions as inadmissible hearsay. 
 For a new trial to be granted under Rule 33, the evidence must be such that
 it "would probably change the result upon retrial." State v. Palmer, 169
 Vt. 639, 640, 740 A.2d 356, 359 (1999) (mem.) (quotation omitted). The
 ultimate decision to grant or deny a Rule 33 motion based on newly
 discovered evidence is left to the sound discretion of the trial court, and
 we will reverse only if the court abused that discretion. Irving v. Agency
 of Transp., 172 Vt. 527, 528, 768 A.2d 1286, 1289 (2001) (mem.).

 I.

 ¶ 6. Defendant first claims that the court erred when it failed "to
 exercise its inherent power to compel [his brother's] testimony through the
 grant of use immunity." He argues that our case law supports the judicial
 authority to grant defense witnesses immunity under circumstances similar
 to his case. To the extent that Vermont law does not explicitly support
 his argument for judicial use immunity, he nonetheless claims that defense
 witness immunity was warranted here to protect his constitutional right, as
 a criminal defendant, to compel witness testimony in his favor. He urges
 us to adopt the Third Circuit's holding in Government of the Virgin Islands
 v. Smith that courts have "inherent authority to effectuate the defendant's
 compulsory process right by conferring a judicially fashioned immunity"
 upon witnesses whose testimony is exculpatory and essential to an
 effective defense. 615 F.2d 964, 969 (3d Cir. 1980) (quoting United States
 v. Herman, 589 F.2d 1191, 1204 (3d Cir. 1978), cert. denied, 441 U.S. 913
 (1979)).
 
 ¶ 7. In Vermont, the power to grant witness immunity lies
 exclusively within the discretion of the prosecutor, and the State is under
 no constitutional obligation to confer such immunity. State v. Roberts,
 154 Vt. 59, 67, 574 A.2d 1248, 1251 (1990); 12 V.S.A. § 1664 (establishing
 that court may issue order granting immunity to witness despite invocation
 of Fifth Amendment privilege upon request by Attorney General or state's
 attorney). While we have recognized exceptions to this statutory rule,
 they are few and limited in scope so as not to disrupt the separation of
 powers inherent in the Legislature's exclusive grant of authority to the
 Attorney General and state's attorneys. 12 V.S.A. § 1664; see also R.
 Schoenhaus, Annotation, Right of Defendant in Criminal Proceeding to Have
 Immunity from Prosecution Granted to Defense Witness, 4 A.L.R. 4th 617, § 2
 (1981) (discussing courts' reluctance to allow defendants to compel
 prosecutors to exercise their legislatively granted authority to afford
 witnesses use immunity).
 
 ¶ 8. Defendant claims that his case is sufficiently analogous to
 two cases in which we recognized an exception to the State's discretion
 under 12 V.S.A. § 1664 to necessitate court-ordered immunity for his
 brother. In State v. Begins, we were concerned by the State's practice of
 scheduling probation revocation hearings prior to the criminal trial on the
 underlying offense because of its potential to coerce self-incrimination by
 probationers. 147 Vt. 295, 297-98, 514 A.2d 719, 721-22 (1986). We held
 that when a prosecutor insists on placing a probationer in the untenable
 position of choosing between her right to due process at the revocation
 hearing and her right to remain silent at criminal trial, the probationer's
 testimony may not be used against her at trial. Id. at 298-99, 514 A.2d at
 722-23. In State v. Cate, we extended this "exclusionary rule" to a
 situation in which a sex offender who had testified at trial was required
 by his probation conditions to admit criminal responsibility at a treatment
 program, exposing him to potential perjury charges. 165 Vt. 404, 415, 683
 A.2d 1010, 1018 (1996). Again, we mandated that probationers be offered
 use immunity before being forced to incriminate themselves. Id. Thus, in
 the limited circumstances where we have recognized an exception to
 prosecutors' exclusive authority to grant use immunity, the defendant has
 been faced with the difficult choice of testifying and risking
 self-incrimination or remaining silent and forfeiting other important
 rights. See Cate, 165 Vt. at 414, 683 A.2d at 1018 (described above);
 State v. Loveland, 165 Vt. 418, 427, 684 A.2d 272, 278 (1996) (statements
 made by sex offenders at sentencing are inadmissible against them at
 subsequent criminal proceedings to encourage them to accept treatment
 rather than emerge from prison untreated); State v. Drake, 150 Vt. 235,
 237, 552 A.2d 780, 781 (1988) (evidence of crimes for which defendant has
 not been charged cannot be considered at sentencing unless defendant is
 offered use immunity); Begins, 147 Vt. at 297-98, 514 A.2d at 721-22
 (described above). We have not extended this rule, however, to defense
 witnesses who invoke the privilege against self-incrimination, and we have
 likewise been cautious to limit its applicability, even to defendants, to
 situations where public policy demands the availability of immunity. See,
 e.g., State v. Gorbea, 169 Vt. 57, 61-62, 726 A.2d 68, 71 (1999) (declining
 to expand exclusionary rule where facts did not fit "the limited exceptions
 carved out in Loveland and Cate"). Particularly here, where defendant
 advocates judicial use immunity not to protect his own privilege against
 self-incrimination, but to compel testimony by his brother that was deemed
 unreliable by the trial court, the limited exceptions articulated in
 earlier cases do not support his position.
 
 ¶ 9. Nevertheless, defendant argues that the circumstances of his
 case implicate important public policy considerations and thus warrant an
 expansion of the exclusionary rule. Without judicial use immunity, he
 claims, he cannot compel witnesses in his favor and the "fair
 administration of justice" will be thwarted. Defendant relies solely on
 the Third Circuit's holding in Smith, and urges us to adopt it. 615 F.2d
 at 969. Smith held that courts have an inherent power to grant witness
 immunity to vindicate a defendant's constitutional right to present
 exculpatory evidence crucial to his case. Id. Recognizing the potential
 for judicial use immunity to seriously encroach upon the realm of the
 executive branch, however, the court emphasized the need for "special
 safeguards" in determining whether to grant such immunity. Id. at 971-72. 
 As such, barring prosecutorial misconduct, it limited the judicial power to
 grant defense witness immunity to situations where "the proffered testimony
 [is] clearly exculpatory; the testimony [is] essential; and there [are] no
 strong governmental interests which countervail against a grant of
 immunity." (FN1) Id. at 972, 974.
 
 ¶ 10. The Smith approach, insofar as it does not rely on
 prosecutorial misconduct, has been uniformly rejected by other federal
 circuit courts, as well as numerous state courts, that have addressed
 judicial use immunity. See, e.g., United States v. Mackey, 117 F.3d 24, 28
 (1st Cir. 1997) (rejecting Smith and holding that courts generally cannot
 compel witness immunity where prosecutor has refused to do so); United
 States v. Herrera-Medina, 853 F.2d 564, 568 (7th Cir. 1988) (same); United
 States v. Turkish, 623 F.2d 769, 778-79 (2d Cir. 1980), cert. denied, 449
 U.S. 1077 (1981) (same); see also Schoenhaus, supra, ¶ 7. But, we need
 not reach the question of whether the Smith approach to judicial immunity
 is a sound one because defendant fails to meet the minimum requirements of
 that decision. Contrary to defendant's assertion that the mere proffer of
 his brother's facially exculpatory testimony triggered the court's inherent
 power to grant defense witness immunity, Smith requires that the defendant
 "make a convincing showing . . . that the testimony which will be
 forthcoming is both clearly exculpatory and essential to [his] case" before
 the court may compel immunity. 615 F.2d at 972. Thus, the court may
 evaluate the credibility of the proffered evidence, and is not required to
 simply take it at face value. See United States v. Sampson, 661 F. Supp.
 514, 519-20 (3d Cir. 1987) (explaining that application of the "clearly
 exculpatory" requirement in Smith should include consideration of "the
 trustworthiness of the evidence that the defendant offers"). 

 ¶ 11. Like the trial court, we are unpersuaded by defendant's
 assertion that his brother's statements regarding the sexual assault of
 A.H. were clearly exculpatory. Defendant's daughter alleged that the crime
 took place in defendant's trailer while his wife and other children were
 asleep in other rooms. Nonetheless, throughout the pretrial investigations
 and trial, not a single mention was made of the brother's potential
 presence in the trailer at the time of the offense. Defendant's son
 testified that he could not recall defendant's brother ever sleeping in his
 room; however, defendant's brother claimed that he slept there on the night
 of the assault. While A.H. testified that she heard her assailant leave
 her room through a doorway to the hall and shortly thereafter saw defendant
 walk into the room, defendant's brother claimed that he hid at the foot of
 her bed as defendant entered the room. Each of these inconsistencies cuts
 against the trustworthiness of the proffered evidence, and the trial court
 was justified in considering them.
 
 ¶ 12. In addition to these inconsistencies, the circumstances
 surrounding the confession diminish its credibility. Defendant's brother
 waited until approximately three years after defendant was first accused to
 come forward with his confession. By that time, defendant's appeal had
 been taken and denied, presenting the opportunity for his brother to tailor
 his confession to the facts and theories already on the record. See State
 v. Haner, No. 2000-577, (Vt. Nov. 21, 2001) (unreported mem.). 
 Furthermore, defendant's brother acknowledged to the police that he was
 aware that, as a juvenile, he would be subject to a lesser punishment than
 defendant. When asked by the police why he waited so long to confess,
 defendant's brother answered that his sister-in-law "was trying to, um, she
 was the one that was trying to find out what to say, not what to say but
 um, where to go to report it." Both the officer who took the statement and
 the judge who heard the testimony at trial reasonably questioned the
 credibility of the statement.

 ¶ 13. Finally, the familial relationship between defendant and his
 brother calls into question the veracity of any exculpatory statements by
 defendant's brother. See Sampson, 661 F.Supp. at 521 (suggesting that a
 close relationship between witness and defendant undermines the credibility
 of the proffered testimony in the Smith "clearly exculpatory" analysis). 
 Particularly given the testimony of a sheriff's deputy and intern at the
 state's attorney office, the court had reason to find the confession
 suspect. The deputy testified that during a July 2003 hearing, she sat
 behind defendant's brother and two women who appeared to be his aunts. She
 overheard defendant's brother tell the women: "We'll be all right as long
 as he doesn't do it again when he gets out." In light of the increased
 motive of close relatives to fabricate exculpatory evidence, the
 inconsistencies between the confession and witnesses' testimony, and the
 general circumstances surrounding the confession, we agree with the trial
 court that defendant failed to make a "convincing showing" that the
 proffered testimony was "clearly exculpatory." Because defendant failed to
 meet the first element of the test for judicial use immunity that he
 advances, the trial court did not err as a matter of law when it declined
 to grant immunity to defendant's brother. 

 II.
 
 ¶ 14. Defendant next asserts that the trial court erred by refusing
 to admit his brother's exculpatory statements into evidence as statements
 against penal interest. V.R.E. 804(b)(3). The trial court is afforded
 broad discretion in determining the admissibility of hearsay under Rule
 804, and we will not upset its decision "unless there has been an abuse of
 discretion resulting in prejudice." State v. Fisher, 167 Vt. 36, 39, 702
 A.2d 41, 43 (1997). Here, as noted in our discussion above, defendant
 failed to make a sufficient showing of the exculpatory statements'
 reliability, and therefore the court deemed the confessions by his brother
 inadmissible hearsay. 

 ¶ 15. Under Rule 804(b)(3), statements that are otherwise hearsay
 are nonetheless admissible if they are contrary to the declarant's penal
 interest when made. Where a statement tends to inculpate the declarant,
 and thereby exculpate the defendant, it is inadmissible "unless
 corroborating circumstances clearly indicate the trustworthiness of the
 statement." V.R.E. 804(b)(3). In evaluating the trustworthiness of the
 exculpatory statements made by defendant's brother in this case, the court
 relied on State v. Corliss, where we stated that to satisfy the condition
 imposed by Rule 804(b)(3), the defendant must "establish that the
 [declarant] had both motive and opportunity to commit the crime" 168 Vt.
 333, 336, 721 A.2d 438, 441 (1998). 

 ¶ 16. In its analysis, the trial court found that although defendant
 established that his brother "had sufficient motive to corroborate his
 confession," he could not similarly show an opportunity to commit the
 crime. Despite defendant's contention that he met the corroboration
 component of Rule 804(b)(3) through his own testimony and that of his
 mother and son, to the effect that defendant's brother sometimes slept over
 at the trailer, the court exercised its discretion appropriately. The
 court took into consideration conflicting testimony regarding when
 defendant's brother may have been at the trailer and where he might have
 slept while there, if he slept there at all. Even if defendant met his
 burden of showing that his brother had the opportunity to commit the
 sexual assault, however, the court was not required to disregard the
 plethora of evidence undermining the trustworthiness of his brother's
 statements.
 
 ¶ 17. The trial court also properly considered the source of the
 confession, defendant's brother, in determining its trustworthiness. See
 United States v. Bobo, 994 F.2d 524, 528 (8th Cir. 1993) (asserting that
 "certain close relationships, such as the sibling relationship, have long
 been recognized to diminish the trustworthiness of hearsay statements
 against the declarant's penal interest"). Further weighing against the
 reliability of the confession were the circumstances under which it was
 made, its inconsistency with other evidence in the record, as well as the
 suspicious statements made by defendant's brother to the police, supra, ¶
 12, and to his two aunts, supra, ¶ 13. Defendant attempts to
 counterbalance this evidence of the confession's noncredibility by arguing
 that "repetition of hearsay equals corroboration" and that his brother's
 twenty-three letters expressing his guilt therefore provide adequate
 corroboration for his statements. Defendant, however, misinterprets our
 decision in State v. Gallagher, in which we upheld a trial court's decision
 to admit hearsay statements made by a child-victim of sexual assault to a
 teacher and social worker. 150 Vt. 341, 347-48, 554 A.2d 221, 225 (1988). 
 In Gallagher, the trustworthiness of the statements was buttressed by "the
 internal consistency and detail of the child's story, and the child's
 affect, intelligence, memory and concern for the truth." Id. at 348, 554
 A.2d at 225. In that case, there were no indications of untrustworthiness
 similar to those here. Furthermore, there were different considerations
 due to the policy underlying V.R.E. 804a-that "child-victims' early
 communications are often highly trustworthy." Reporter's Notes, V.R.E.
 804a. Given the lack of corroborating circumstancing clearly indicating
 the reliability of the statements made by defendant's brother, and more
 importantly, the abundance of evidence indicating just the opposite, we
 conclude that the trial court properly exercised its broad discretion in
 treating the confessions as inadmissible hearsay. 

 III.
 
 ¶ 18. We conclude that the trial court did not violate defendant's
 due process rights by denying his motion for a new trial. Defendant's
 contention that the court "completely shutdown [his] ability to present
 clearly exculpatory evidence for prosecuting his [m]otion for [n]ew [t]rial
 based upon newly discovered evidence" is without merit. To the contrary,
 the trial court made the appropriate legal determination that judicial use
 immunity was unwarranted both under existing Vermont law and the law
 advocated by defendant, and properly exercised its discretion in excluding
 the hearsay statements by defendant's brother. As the confession
 underpinning defendant's motion for a new trial was correctly deemed
 inadmissible due to its unreliability, the court properly dismissed the
 motion. See Irving, 172 Vt. at 528, 768 A.2d at 1289 (holding that we will
 reverse a trial court decision on a motion for new trial only for abuse of
 discretion). Defendant could not succeed on the motion for a new trial, as
 the newly discovered evidence (which properly excluded the substance of the
 confession) was unlikely to change the result on retrial, and therefore the
 trial court did not abuse its discretion in denying the motion. See
 Palmer, 169 Vt. at 640, 740 A.2d at 359 (stating that motion for new trial
 is granted only if circumstances meet a stringent test, including whether
 the evidence is likely to change the result on retrial). 

 Affirmed.

 FOR THE COURT:



 _______________________________________
 Associate Justice




------------------------------------------------------------------------------
 Footnotes


FN1. Two additional requirements for judicial use immunity were articulated
 by the Smith court. Neither of these requirements-that immunity be
 properly sought in the district court and that the defense witness be
 available to testify-is at issue here. Id. at 972.